## COSMOPOLITAN MINING COMPANY v. WALSH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF COLORADO.

No. 134.   Argued January 20, 21, 1904.—Decided March 21, 1904.

If a case does not really involve the construction or application of the Con-
stitution of the United States in the sense in which that phrase is em-
ployed in the Judiciary Act of 1891, this court is precluded from examin-
ing the merits on writ of error.

Whether the case should go to the Circuit Court of Appeals or be brought
directly to this court must be determined from the record and there is
no authority for the trial judge making a certificate that the application
and construction of the Constitution of the United States were involved
in the action.

The contention that under the laws of a State it was essential to the legality
of service upon an alleged agent of a corporation that the corporation
should have been doing business within the State and the agent residing
within the county named as his place of residence in the appointment
does not require the construction of the Constitution of the United States
but simply calls for the construction of the constitution and laws of the
State or the application of the principles of general law.

The Cosmopolitan Mining Company was incorporated under
the laws of the State of Maine in June, 1884, for the purposes
of "buying, selling, leasing, working, developing and improving
gold, silver, copper or other mines, and purchasing and holding
such other property as may be necessary or convenient."   Soon
after such incorporation the mining company—as we shall
hereafter call the plaintiff in error—became the owner of min-
ing claims, consisting of lodes and millsites, situated in the
county of Ouray, Colorado.

The constitution of Colorado (art. XV, sec. 10) provided that
"no foreign corporation shall do any business in this State
without having one or more known places of business and an
authorized agent or agents in the same, upon whom process
may be served."   The statutes of the State required that before

a foreign corporation should be permitted to do any business in Colorado it should make a certificate, signed by its president and secretary, duly acknowledged, and file the same with the Secretary of State and in the office of the recorder of deeds in each county in which business was to be carried on, designating the principal place where the business of such corporation was to be conducted in the State, and also naming an authorized agent or agents in the State, residing in the principal place of business of the corporation, upon whom process might be served. Mills' Ann. Stat. sec. 499. In compliance with the foregoing requirements the mining company filed on February 10, 1886, a certificate in the office of the Secretary of State of Colorado and in the office of each of the recorders of Ouray and Cumberland Counties, designating the county of Ouray as the principal place where the business of the corporation was to be carried on, and naming J. M. Jardine as the agent upon whom process might be served.

In the months of April and May, 1895, actions were brought in the county court of Ouray County by the A. W. Begole Mercantile Company, John Ashenfelter, P. H. Fennell and William C. Fulton, to recover from the mining company sums aggregating about $1,250, alleged to be due for labor performed and merchandise furnished to the mining company in the State of Colorado in the years 1893 and 1894. In each complaint it was alleged that the mining company was a corporation "duly incorporated and organized under and by virtue of the laws of the State of Maine, with its principal office in the State of Colorado, in the city of Ouray, in said Ouray County." The Begole action was first instituted, and an attachment was issued and levied upon the real property of the mining company in Ouray County, being the mining claims heretofore referred to. In the complaints in the Ashenfelter and Fennell actions the fact of the levy of an attachment in the Begole case was recited, and the court was asked to make Ashenfelter and Fennell parties plaintiff in that action, and to give them like remedies against the mining

company "as the law gives to the original plaintiff in said action." Writs of attachment were also issued in the Ashenfelter and Fennell actions, and were levied in the same manner as was the writ of attachment in the Begole case. In each of the three actions last referred to a copy of the writ of attachment and of the summons and complaint were served in San Miguel County, Colorado, upon J. M. Jardine, described in the return of the sheriff as the "duly authorized agent for the within-named company" (the Cosmopolitan Mining Company). The complaint in the Fulton case contained no reference to the levy of an attachment in the Begole action, and the plaintiff did not ask to be made a party to the action. Although a writ of attachment was issued in the Fulton case, it was not shown to have been levied. A copy, however, of the writ as also of the summons and complaint, was served upon Jardine, described as in the returns in the other cases.

Judgments were entered in each of these county court actions, and in each judgment there was embodied an order "that the attachment herein be sustained, and a special execution issue." On the files, in the Begole action, was placed what was termed a "pro rating order," entitled in the Begole action, and therein was recited the recovery of judgments in the Ashenfelter, Fennell and Fulton actions, and that it appeared to the court that property belonging to the defendant company "was attached for the purpose of satisfying such judgments as might be obtained by the several plaintiffs against the said company." There was also contained therein direction to the sheriff of Ouray County "to sell the above described property or so much thereof as shall be necessary to satisfy said several judgments, together with the costs and interest thereon." Special writs of execution were issued, and the attached property was sold to one J. C. Marsh, as trustee for the several judgment creditors. In each case it was stated on the return on the writ of execution that the particular judgment had been fully satisfied.

Marsh received a certificate of purchase, and afterwards

assigned the same to Stephen A. Osborn, and on May 25, 1896, the period of redemption having expired, a sheriff's deed was executed and delivered to Osborn. On June 16, 1896, Osborn conveyed the property to Walsh, the defendant in error herein.

On March 1, 1897, Walsh brought an action against the mining company and Jardine in the District Court of Ouray County, Colorado, to quiet his title to the property thus acquired. It was alleged that the mining company was a corporation of the State of Maine, organized for the purpose, among others, of carrying on the mining business in the county of Ouray and State of Colorado, and that by certificate, dated December 16, 1885, and recorded January 21, 1886, Jardine had been "duly appointed as the authorized agent of the defendant company, upon whom process might be served." The proceedings in the Begole, Ashenfelter and Fennell actions were set forth, as also the acquisition by Walsh under the same title of the property in question. It was averred that the defendants claimed an interest in the property and it was prayed that they might be required to set up such claims, and that it might be adjudged that the defendants did not have any interest in the property. Return was made of service of the summons and complaint on Jardine individually, and on the mining company, "by delivering to John M. Jardine, the duly authorized agent of the defendant company, and designated by it as the person upon whom service would be served." Jardine filed a disclaimer of interest, and judgment was entered against the mining company by default. In that judgment it was recited that entry of the default of the mining company had been made "for the failure of the said defendant to plead as required by law, after due service of summons upon it in manner and form as by law provided;" that the plaintiff had been sworn as a witness in the case; and that the court had heard the testimony given by the plaintiff and inspected the records, deeds and documents offered in evidence. After next finding the facts to be as they were averred in the complaint of Walsh, the court decreed as follows:

"It is, therefore, considered, adjudged and decreed by the court that the said defendants have not, nor have either of them, any right, title, interest, claim or demand in or to any part of the premises above described, and that the pretended claim of the defendant, The Cosmopolitan Mining Company, in and to said premises is wholly without right or justification in law. That the plaintiff is the owner and in the possession of the premises and mining claims above described and entitled to the quiet and peaceable possession of said mining claims and each of them."

The present action was brought on November 3, 1900, in the Circuit Court of the United States for the District of Colorado by the mining company, to recover possession of the real property purported to have been sold under the judgments in the county court actions. Diversity of citizenship of the parties was alleged in the complaint, and the property in controversy was averred to exceed $2,000 in value. It was further charged that the plaintiff had been ousted of the possession of the property claimed by it on May 25, 1896, the date of the sheriff's deed under the sales on execution. The answer contained a general denial, and special defences, one of which set out the various proceedings in the county court actions brought by Begole *et al.* and the other proceedings by which title to the property in dispute was claimed to be vested in Walsh. The judgment rendered in the action to quiet title was also specially pleaded, and there were averments of facts alleged to constitute estoppel. A replication and amended replication were filed to this answer. It was alleged in substance that prior to the service made upon Jardine, in the actions referred to in the answer of Walsh, the mining company was not doing business in the State of Colorado, and that in those actions no service of process had been made upon it, hence the Colorado courts acted without jurisdiction, and consequently "the plaintiff has been and is being deprived of its property, viz: The property sought to be recovered in this action without notice, hearing, opportunity to be heard, or due

process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States."

The action was tried to a jury. The case in chief for the mining company consisted of documentary evidence, exhibiting title in the mining company to the property in controversy at the date of the alleged ouster. The evidence for the defendant consisted of a certified copy of the statutory designation of Jardine as agent of the mining company, the judgment records in the various actions relied upon, tax deeds covering two of the millsites enumerated in the complaint, and oral testimony. Objection was made to the admission in evidence of the judgment records substantially upon the following grounds: 1. That the records of the judgments in the county court actions did not on their face show the appointment of Jardine as the agent of the mining company, and therefore there was nothing in the records to show that service had been made upon a proper agent of the corporation. 2. That even if the fact of the statutory designation by the corporation of Jardine as its agent could be incorporated into the records and considered, as it was not shown that at the time of the service the corporation was doing business in the State, jurisdiction over the company was not acquired by the service upon Jardine. 3. That in any event, as the service of process in the county court actions had been had upon Jardine in another county than the one mentioned in the statutory appointment as the place of residence of Jardine, the service was void. 4. That as there was then no evidence of personal service on the corporation through its agent, the mere levy of a writ of attachment was insufficient to confer jurisdiction and to authorize the court to enter judgment and direct a sale of the attached property. These objections, it was insisted, established that the judgments recovered against the corporation were rendered without due process of law and in violation of the Constitution of the United States. The offer of the judgment record in the action to quiet title was also objected to because it was not shown that the company was doing business in Colorado at the time

of service of Jardine, and therefore the service on him was void, and further because the court in its judgment or decree did not purport to direct a conveyance but simply attempted by such judgment or decree to establish title. Treating the actions in the county court as being *in personam* and not *in rem*, the objections were finally overruled by the trial judge, and all the judgment records were admitted in evidence except the record in the *Fulton* case. The judgment records in the county court actions were admitted on the ground that it sufficiently appeared from the records that the mining corporation at the time the actions were brought was doing business in the State of Colorado. The record in the *Fulton* case was excluded because of a deficiency in this particular. The court admitted the records in the action to quiet title because it appeared that the mining company was alleged in the complaint not only to have been authorized to carry on business in the State of Colorado, but to have been formed for that purpose, and its appointment of a statutory agent was a consent to be served through such agent.

Following the introduction of these records and in support of the defence of estoppel, evidence was offered on behalf of the defendant tending to show the expenditure made by him in connection with the property subsequent to his acquisition of title, but the court held the same to be inadmissible.

In rebuttal, the plaintiff offered in evidence from the record in the Begole action a writing signed by Jardine, in effect notifying the court that he did not reside in Ouray County, and disclaiming being an agent of the mining company, and also asking the court to quash the service made on him of the summons and writ of attachment. The paper was not admitted in evidence and an exception was taken to its exclusion. Two witnesses were next examined on behalf of the mining company for the purpose of establishing that the company maintained no office and was not doing business in the county of Ouray at the time of the service of process in the actions referred to in the answer. No attempt, however, was made to

prove that there had been an express revocation of the statutory designation of Jardine as agent to receive service of process. The testimony of the two witnesses above referred to tended to show that the mining company had never any established office in Ouray other than that of its statutory agent, while he resided in Ouray; that the mines of the company were situated some six or seven miles from Ouray, and had been worked up to a short time before the bringing of the actions which resulted in a sale of the property. But one witness—the sheriff of the county—testified concerning the operation of the mines, and he was not shown to possess definite knowledge as to when operations ceased. No testimony was introduced to show whether the suspension of operations, if entire, was intended to be permanent or was merely temporary. The court overruled a motion on behalf of the defendant to strike out the testimony of these witnesses, but in doing so observed that it would instruct in view of the testimony.

Thereupon counsel for the plaintiff asked the court to direct the jury to find for the plaintiff except as to two millsites which were covered by tax deeds to Walsh, and to the overruling cf this motion the mining company excepted. The court then of its own motion instructed the jury as follows:

"Gentlemen of the Jury: In the view the court takes of this case, it becomes a question of law, and the court will instruct you to find a verdict in favor of the defendant and that the defendant is entitled to possession of the demanded premises."

On the verdict, and after overruling a motion for a new trial, judgment was entered. A writ of error from this court was thereupon allowed by the trial judge, who made and signed a certificate reciting "that in the pleadings in this action as well as in the rulings of this court in admitting and refusing to admit evidence, and in giving and refusing to give instructions to the jury as set forth in the assignment of errors hereto annexed, there were involved the application and construction of the Constitution of the United States, viz., of the part of the Four-

teenth Amendment to the same which provides for due process of law.".

Mr. *Carlton M. Bliss*, with whom Mr. *William H. Moody*, Mr. *John A. Perry* and Mr. *George C. Preston* were on the brief, for plaintiff in error.

Mr. *Charles S. Thomas* and Mr. *Charles J. Hughes, Jr.*, with whom Mr. *Gerald Hughes*, Mr. *William H. Bryant* and Mr. *Harry H. Lee* were on the brief, for defendant in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

We are asked in this case to review directly the judgment of a Circuit Court of the United States, and our right to do so, if at all, depends on that clause of section 5 of the Judiciary Act of 1891, which authorizes the taking of appeals or writs of error from ·District or Circuit Courts direct to this court "in any case that involves the construction or application of the Constitution of the United States." Of course, if the case at bar does not really involve the construction or application of the Constitution of the United States, in the sense in which that phrase is employed in the Judiciary Act of 1891, we are precluded from examining the merits upon this writ of error. In order to determine whether the case is one which should have gone to the Circuit Court of Appeals and not have been brought directly to this court, we must look into the record, without regard to the certificate given by the trial judge. Indeed, we know of no authority for the making of such certificate.

Before coming to the record, however, we shall briefly advert to the legal principles which must control.

In *Carey* v. *Houston & Texas Central Ry.*, 150 U. S. 170, the record exhibited the following controversy: Stockholders of the railway company filed a bill in equity in a Circuit Court of the

United States, praying, among other relief, the setting aside of a certain decree of foreclosure and sale, basing the claim upon the grounds of collusion and fraud and want of jurisdiction in the court which had entered the decree. A final decree was entered in the cause dismissing the bill and appeals were allowed both to the Circuit Court of Appeals and to this court. The appeal to this court was based upon the contention that the cause involved not only the question of the jurisdiction of the court below, but also the question of the construction or application of the Constitution of the United States. The appeal was dismissed, and in the course of the opinion, speaking through Mr. Chief Justice Fuller, it was said (pp. 179, 181):

"The Judiciary Act of March 3, 1891, in distributing the appellate jurisdiction of the national judicial system between the Supreme Court and the Circuit Court of Appeals therein established, designated the classes of cases in respect of which each of these courts was to have final jurisdiction, (the judgments of the latter being subject to the supervisory power of this court through the writ of certiorari as provided,) and the act has uniformly been so construed and applied as to promote its general and manifest purpose of lessening the burden of litigation in this court.

\*    \*    \*    \*    \*    \*    \*    \*

"It is argued that the record shows that complainants had been deprived of their property without due process of law, by means of the decree attacked, but because the bill alleged irregularities, errors and jurisdictional defects in the foreclosure proceedings, and fraud in respect thereof and in the subsequent transactions, which might have enabled the railroad company upon a direct appeal to have avoided the decree of sale, or which, if sustained on this bill, might have justified the Circuit Court in setting aside that decree, it does not follow that the construction or application of the Constitution of the United States was involved in the case in the sense of the statute. In passing upon the validity of that decree the Circuit Court decided no question of the construction or the application of the

Constitution, and, as we have said, no such question was raised for its consideration. Our conclusion is that the motion to dismiss the appeal must be sustained."

In *In re Lennon*, decided at the same term, 150 U. S. 393, the construction given in the *Carey* case to the provisions of section 5 of the Judiciary Act of 1891 was reiterated. In that case an appeal had been taken directly to this court from an order of the Circuit Court of the United States denying an application for a writ of *habeas corpus* sued out to obtain relief from an imprisonment upon a conviction for contempt. The jurisdiction of the committing court over the cause in which the order of commitment had been made, as well as over the person of the party sentenced for contempt, was assailed. The direct appeal to this court, however, was dismissed for want of jurisdiction. After pointing out that the objection for want of jurisdiction in the court below was without any foundation, the court, speaking through Mr. Chief Justice Fuller, said (p. 400):

"Nor can the attempt be successfully made to bring the case within the class of cases in which the construction or application of the Constitution is involved in the sense of the statute, on the contention that the petitioner was deprived of his liberty without due process of law. The petition does not proceed on any such theory, but entirely on the ground of want of jurisdiction in the prior case over the subject matter and over the person of petitioner, in respect of inquiry into which the jurisdiction of the Circuit Court was sought. If, in the opinion of that court, the restraining order had been absolutely void, or the petitioner were not bound by it, he would have been discharged, not because he would otherwise be deprived of due process, but because of the invalidity of the proceedings for want of jurisdiction. The opinion of the Circuit Court was that jurisdiction in the prior suit and proceedings existed, and the discharge was refused, but an appeal from that judgment directly to this court would not, therefore, lie . . . the ground that the application of the Constitution was

involved as a consequence of an alleged erroneous determination of the questions actually put in issue by the petitioner."

It is obvious, under the construction of the Judiciary Act of 1891, announced in the cases just referred to, that this cause does not involve the construction or application of the Constitution of the United States, and therefore was not entitled to be brought directly to this court from the Circuit Court of the United States. When the proceedings at the trial are taken into view it is clear that the contentions which were urged did not require the construction of the Constitution of the United States, but simply called for the construction of the constitution and laws of the State of Colorado or the application of the principles of general law. The real contention of the mining company was that under the laws of Colorado it was essential to the legality of the service upon its alleged agent that the corporation when the service was made should have been doing business within the State, and that the agent should have been resident within the county named in the appointment as his place of residence. It was not disputed that, as authorized by its charter, the mining company had bought mines within the State of Colorado; that it had thereafter appointed, as required by the laws of Colorado, an agent within the State upon whom service of process might be made, and that there had been no direct revocation of such agency. Moreover, it was not disputed that the mining company had worked the mines in question up to a short time before the bringing of the actions in the county court of Ouray County, and that the liabilities enforced in those actions were contracted in Colorado and grew out of the operation of the mines in question. No evidence was introduced tending to show that the company had permanently ceased the operation of its mines in Colorado and withdrawn from that State; and the undisputed fact was that when the county court actions were brought it still owned the property which it had acquired as authorized by its charter.

No claim was made that the sale of the property under the

executions in the county court actions was void under the Constitution of the United States because wanting in due process of law, if the service on the agent was valid under the law of Colorado or the principles of general law applicable to the facts disclosed at the trial. The primary and fundamental contention of the mining company was therefore this and nothing more: that under the circumstances disclosed the service upon the statutory agent was unauthorized either by the law of Colorado or the principles of general law; and hence that it had not lost its title to the property. The claim asserted under the Constitution of the United States was, therefore, merely conjectural and amounted to this only, that if under the law of Colorado or under the general law the service on the alleged agent was void, that it would be a violation of the Constitution of the United States to give effect to judgments based on such service. Not only the statement we have made from the record, but the argument at bar, makes this a demonstration. Thus, in the discussion at bar, it was stated that it was not claimed that the State of Colorado could not without a violation of the Constitution of the United States have exacted that the authority conferred by a foreign corporation upon an agent to receive service of process should continue for the purpose of the enforcement of obligations contracted by the corporation, although the corporation had ceased to do business within the State, but that as the Colorado law when properly construed did not so provide, therefore the service was invalid, and the sale of the property of the mining company based on such service was void. This, however, as we have already shown, amounts but to the concession that the substantial controversy which the case presented involved the mere determination of what was the law of Colorado on the subject. The rulings of the court below as to the admissibility of evidence and its final direction of a verdict involved necessarily deciding that the service upon the agent was valid by the law of Colorado, or the principles of general law applicable thereto, and its action in so doing in nowise involved the con-

struction or application of any provision of the Constitution of the United States.

*Writ of error dismissed.*

MR. JUSTICE BREWER is of opinion that this court has jurisdiction, that the judgment of the Circuit Court was right, and should be affirmed.