In re David S. WILSON, Debtor.

**BEECHWOOD WEST HOMEOWNERS' ASSOCIATION and Linton C. Beasley On behalf of the Estate of David S. Wilson, Plaintiffs,**

v.

**GENTRY, LOCKE, RAKES & MOORE, Defendant.**

Bankruptcy No. 7–85–01377.
Adv. P. No. 7–87–0155.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Aug. 31, 1987.

Howard J. Beck, Jr., Roanoke, Va., for Gentry, Locke, Rakes & Moore.

E. Ronald Feinman, Jr., Lynchburg, Va., for Beechwood Homeowners' Assoc. and Linton C. Beasley.

Jonathan E. Davies, Lynchburg, Va., special counsel to the unsecured creditors' committee.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

This adversary proceeding involves a Complaint filed by an individual creditor of the above-captioned Debtor in Possession to avoid certain transfers made by the Debtor in Possession to his attorney prior to the filing of the Chapter 11 proceeding in this case. The individual creditors who have initiated the Complaint proceeding allege that they have standing to sue the attorney for the Debtor in Possession under 11 U.S.C. § 547 as a result of § 1109(b). The attorneys for the Debtor in Possession, Gentry, Locke, Rakes & Moore (hereinafter referred to as "Gentry"), have filed their responsive pleading pursuant to Fed.R.Civ.P. 12(b)(6) which is made applicable to adversary proceedings by Bankruptcy Rule 7012(b). The two grounds in the Motion filed by Gentry are: (1) that paragraph 16.5 of the Debtor-in-Possession's confirmed Plan bars institution of a voidable preference action by an individual creditor in this particular case and; (2) that under any circumstances an individual creditor has no standing to initiate a voidable preference action under § 547 of the Bankruptcy Code.

### Facts

The facts in this case are straightforward and, at this stage of the proceeding, not in dispute. The Plaintiffs in the adversary proceeding are Beechwood West Homeowners' Association and Linton C. Beasley (hereinafter referred to collectively as "Beasley"). Beasley brings the Complaint proceeding on behalf of the Debtor in Possession. Beasley and its counsel have been very active participants in the reorganization proceeding of the Debtor in Possession from its inception. Gentry, the law firm representing the Debtor in Possession, represented the Debtor in Posses-

sion for an extended period of time prior to the filing of his petition for relief under Chapter 11 of the Bankruptcy Code on November 21, 1985. In connection with its representation of the Debtor in Possession, Gentry filed a fee disclosure statement with the Court and the Debtor in Possession disclosed on his statement of affairs the payments made to Gentry which are required to be disclosed in order to be responsive to the appropriate question on the statement of affairs.

It is clear that the issue of potential preferential transfers to Gentry was raised prior to confirmation of the Debtor-in-Possession's Chapter 11 proceeding. This is evidenced by paragraph 16.5 of the Debtor-in-Possession's confirmed Plan which appears to provide a mechanism under which any potential preferential transfers to Gentry can be investigated and prosecuted.

Paragraph 16.5 of the Debtor-in-Possession's confirmed Plan states as follows:

16.5 *Appointment of Special Counsel for Unsecured Creditors' Committee.* Jonathan E. Davis [sic], an attorney practicing law in Lynchburg, Virginia, and presently counsel of record for the Bernard family in this case, shall be designated and appointed by the Court upon confirmation as special counsel for the Unsecured Creditors' Committee for the following special, limited purposes and subject to the following conditions: (a) said appointment shall be for the sole purpose of examining debtor's pre-petition payments to his counsel of record in this case, and instituting preference litigation pursuant to 11 U.S.C. Section 547 in connection therewith if such litigation is determined by said special counsel in his discretion to be advisable, warranted, feasible and cost effective; (b) the cost of services rendered by said special counsel, including any expenses incurred, shall *not* constitute costs of administration in this case, shall *not* be paid by the debtor, and shall not be paid from assets of the Chapter 11 estate; (c) any costs or expenses incurred by said special counsel in connection with performance of his duties as set out in this paragraph, may

be recovered and reimbursed by said special counsel, or by any person or persons who paid said costs and expenses incurred by said special counsel, from the recovery, if any, arising from any such preference litigation authorized by this paragraph 16.5; (d) any preference action authorized to be initiated by the provisions of this paragraph shall be brought in the name of the Unsecured Creditors' Committee; (e) the Unsecured Creditors' Committee shall continue after confirmation for the special purpose set out in this paragraph and be empowered to institute the preference actions contemplated by this paragraph 16.5; (f) counsel of record for the debtor acknowledge that the preference actions authorized pursuant to the terms of this paragraph 16.5 are properly within the powers of a Creditors' Committee and agree not to challenge the authority of said committee to bring such an action pursuant to the provisions of this paragraph 16.5 set out herein; (g) any recovery from any preference action authorized by this paragraph, net of costs of litigation as set out in paragraph 16.5(c) above, shall be paid into the fund for the benefit of unsecured creditors pursuant to paragraph 2.3 herein.

This adversary proceeding has been instituted against Gentry subsequent to the confirmation of the Debtor-in-Possession's Plan of reorganization. The sole basis for the standing of Beasley to bring this litigation is alleged by the Complaint to be 11 U.S.C. § 1109(b) which states as follows:

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

*Law*

The statutory basis upon which Beasley would recover in this case is 11 U.S.C. § 547(b). With respect to the issue of standing that Code section states, in part, as follows: "(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property...." Subsection (c) of § 547 is not relevant to the standing issue. Under 11 U.S.C. § 1107(a), the debtor in possession in a Chapter 11 reorganization proceeding is made the equivalent of a trustee in bankruptcy. Accordingly, at the outset, it would appear that both a trustee in bankruptcy and, the debtor in possession as an equivalent of the trustee, have standing to bring voidable preference litigation.

11 U.S.C. § 1109(b), quoted above, does not give a creditor specific statutory authority to bring a preference action under § 547. However, it does give a creditor the right to raise, appear, and be heard on any issue in a case under Chapter 11. Beasley argues that the language of 11 U.S.C. § 1109(b) is broad enough to permit the creditor to bring a preference action under § 547. Beasley relies on *Matter of Marin Motor Oil, Inc.*, 689 F.2d 445 (3rd Cir. 1982), for the proposition that a creditor has an unqualified right to appear and be heard in a Chapter 11 proceeding. It is clear, however, that the *Marin* case and the other cases cited by Beasley do not stand for the proposition that a creditor may initiate an action under 11 U.S.C. § 547. In fact, the *Marin* case merely gave a creditors' committee standing to intervene in adversary proceedings instituted by the trustee. *Marin*, 689 F.2d at 445. Beasley, however, wants this Court to extend the holding of *Marin* to hold that a creditor has an absolute right to sue under § 547. In the *Marin* opinion, the Third Circuit traced the legislative history of § 1109(b) from its predecessor, 11 U.S.C. § 606 (§ 206 of Chapter X of the Bankruptcy Act). The Third Circuit determined that under § 206 of the Bankruptcy Act creditors had a right to intervene in proceedings initiated by the trustee and concluded that Congress did not intend to restrict that right when it enacted § 1109(b) of the Bankruptcy Code. *Id.* at 451–54. However, the decision in *Marin* did not hold that the right to appear and be heard under 1109(b) is to be extended to permit a creditor to initiate an adversary proceeding. Further, there is absolutely no indication

from the legislative history that Congress intended to expand the scope of § 206 of the Bankruptcy Act to permit creditors to institute litigation when they are not otherwise specifically authorized by statute. This Court is of the opinion that Congress intended, in enacting § 1109(b), only to permit creditors and other parties in interest to participate in litigation otherwise properly commenced in a proceeding when their interests relate to the property or the transaction which is the subject of the action otherwise properly instituted and the creditors are so situated that the disposition of the action may, as a practical matter, impair their ability to protect that interest. Therefore, this Court declines to extend the reach of 11 U.S.C. § 1109(b) beyond the plain meaning of the statutory language.

Beasley also relies on a line of cases of which *In re Toledo Equipment Co., Inc.,* 35 B.R. 315 (Bankr.N.D.Ohio 1983) is representative. The *Toledo Equipment* case held that the provisions of § 1109(b) impliedly authorize a creditors' committee to bring an action, if in its discretion, it would benefit the estate, and if the debtor in possession has unjustifiably failed to prosecute the case. *Id.* at 319. The *Toledo* decision also set forth certain specific steps which the creditors' committee is required to take prior to its institution of an adversary proceeding under § 547. For example, the creditors' committee must file an application with the Bankruptcy Court for authority to bring the adversary proceeding and must prove the following: (1) that the creditors' committee has made a request of the debtor in possession regarding the initiation or prosecution of an action which will benefit the estate; (2) that the request has been refused by the debtor in possession; (3) that there is a prima facia case showing that a colorable claim exists which, if successful, would benefit the estate; and, (4) that the debtor-in-possession's inactivity on the claim is unjustifiable or abusive of its discretion. *Id.* at page 320.

To the extent that the line of cases of which *Toledo* is representative uses § 1109(b) as a statutory basis for the authority of a creditors' committee to initiate a preference action under § 547(b), this Court is of the opinion that the *Toledo* Court went beyond mere statutory interpretation in its holding. Therefore, this Court declines to follow the *Toledo* Court as far as the statutory basis for initiating the preference litigation is concerned. It should be noted that the *Toledo* case involved an adversary proceeding which was initiated prior to confirmation of the Debtor-in-Possession's Chapter 11 Plan of reorganization. At that stage of the proceeding, it appears to this Court that individual creditors have statutory vehicles other than § 1109(b) in order to protect their individual interests. For example, pre-confirmation, an examiner or a trustee may be appointed under 11 U.S.C. § 1104 if it appears that the debtor in possession is going to refuse to initiate an adversary proceeding which should clearly be initiated. Post-confirmation and absent any other provisions for protection of creditors' interests 11 U.S.C. § 105(a) is available to redress any potential harm which may come to a creditors' interests in the confirmed plan of reorganization. In this context, the guidelines set forth in the *Toledo* case, *supra* p. 535, for initiating an adversary proceeding would be appropriate for purposes of determining standing of an individual creditor to sue. However, in the case at bar, we do not reach the question of whether or not § 105 should be employed.

In this case, the Debtor in Possession provided for protection of the unsecured creditors' interest in voidable preferences which may have been made to Gentry by including paragraph 16.5 of the confirmed Plan of reorganization quoted above. Upon confirmation of the Debtor-in-Possession's Plan, the Debtor in Possession and all of his creditors became bound by the Plan provisions whether or not their claim was impaired and regardless of their acceptance of the Plan. 11 U.S.C. § 1141(a). Beasley has played an active roll throughout this reorganization proceeding. In fact, this Court takes judicial notice of the fact that Beasley participated actively at the confirmation hearing on the Debtor in

Possession's Plan of Reorganization. No objection was lodged by any party in interest at or before the confirmation hearing with respect to the provisions of paragraph 16.5 of the Plan of Reorganization and, in fact, Beasley accepted the Plan of Reorganization. The same is true of the unsecured creditors' committee which has been vested with the authority to pursue, in its discretion, any preference litigation. Further, this Court takes judicial notice that Jonathan E. Davies, Esquire, the attorney designated in paragraph 16.5 as special counsel to the creditors' committee for purposes of the preference investigation and litigation, was also an active participant in the reorganization proceedings and at the hearing on confirmation. At no time did either Mr. Davies or the unsecured creditors' committee raise any objection whatsoever to the provisions found in paragraph 16.5. To a greater extent, prior to confirmation neither Mr. Davies nor the unsecured creditors' committee expressed any reluctance to carry out the duties imposed upon them by paragraph 16.5. Both the creditors' committee and its designated counsel became bound upon confirmation of the Plan, the confirmation of the Plan had the effect of designating Mr. Davies without necessity of further Court order, and both Mr. Davies and the unsecured creditors' committee must perform their duties as set forth in paragraph 16.5 of the confirmed Plan of Reorganization. The designation of a representative of the estate to pursue a claim has statutory basis in 11 U.S.C. § 1123(b)(3)(B) and at least one Court has upheld the right of a debtor to assign in a plan the right of pursuing voidable preferences to another entity. *See In re Xonics, Inc.*, 63 B.R. 785 (Bankr.N.D.Ill. 1986). In the event that the unsecured creditors' committee abuses the discretionary powers conferred upon it by the confirmed Plan, creditors may well have contractual rights to enforcement or damages.

This Court is of the opinion that Congress did not intend individual creditors to have a free rein to initiate litigation in a Chapter 11 proceeding. To adopt the interpretation of § 1109(b) advocated by Beasley would unjustifiably expand the plain wording of the statute, especially under the facts in the case at bar. Thus, this Court holds that, at the present time, the individual creditors in this case have no standing to sue Gentry under 11 U.S.C. § 547.

The use of 11 U.S.C. § 105 as a vehicle to give a creditor standing to sue should, in this Court's opinion, be used only when there is no other adequate remedy available to the creditor and a substantial injustice will result. Should such a circumstance arise, then the guidelines of *Toledo, supra* p. 535, should be used to determine the standing issue. But, in the case at bar, given the existence of paragraph 16.5 of the confirmed Plan, this Court is of the opinion that § 105 need not be utilized. Accordingly, an order will be entered granting the Motion to Dismiss of Gentry without prejudice.

This Court has retained jurisdiction to insure implementation of the Chapter 11 reorganization Plan as confirmed. It would appear to this Court that it is incumbent upon the unsecured creditors' committee to take some affirmative action under paragraph 16.5 of the confirmed Plan to determine whether it will initiate an adversary proceeding against Gentry. This affirmative action must be taken so that there is certainty among all of the parties in interest as to whether preference litigation will be instituted. Accordingly, an order will be entered directing that the unsecured creditors' committee file a written report with this Court not later than sixty (60) days from the date of entry of the order indicating its performance under paragraph 16.5 of the Plan of Reorganization as confirmed.