**In re SRJ ENTERPRISES, INC., d/b/a Stephen Jones Nissan of Buffalo Grove, Debtor.**

**NBD PARK RIDGE BANK, Plaintiff,**

**v.**

**SRJ ENTERPRISES, INC., d/b/a Stephen Jones Nissan of Buffalo Grove; and Success National Bank of Lincolnshire, f/k/a First National Bank of Lincolnshire, Defendants.**

**Bankruptcy No. 92 B 06101.**
**Adv. No. 92 A 00771.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 26, 1993.

See also 150 B.R. 933; 151 B.R. 198.

Edward J. Lesniak, Burke, Warren & MacKay, P.C., Chicago, IL, for NBD Park Ridge Bank.

Keevan D. Morgan, Durkin, Morgan, Roberts Barnett & Bley, Chicago, IL, for Success Nat. Bank of Lincolnshire f/k/a First Nat. Bank of Lincolnshire.

Mark S. Lieberman, Rosenthal & Schanfield, P.C., Chicago, IL, for debtor.

Katy Gleason, Dept. of Justice, Chicago, IL, for U.S. Trustee.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

A junior lien creditor who financed a chapter 11 debtor's automobile dealership seeks to enhance its distribution from the proceeds of the sale of the debtor's business. To accomplish this, the junior creditor has filed a complaint with three counts relating to the recovery from the senior lien creditor of an allegedly preferential transfer and one count for equitable subordination of the senior creditor's lien. Because this Court concludes that the junior creditor lacks standing to bring the preference action and fails to state a claim for equitable subordination, the senior creditor's motion to dismiss has been granted and the junior creditor's motion to prosecute complaint has been denied.

## I. BACKGROUND

SRJ Enterprises, Inc. (the "Debtor") owned and operated a Nissan automobile dealership. NBD Park Ridge Bank ("NBD") financed the Debtor's new vehicle inventory with a loan of approximately $1,400,000 in March, 1991. NBD took and perfected a security interest that purportedly covered all of the Debtor's assets. As additional security, the Debtor's president guaranteed the NBD loan. Later, the Debtor borrowed an additional $900,000 from Success National Bank of Lincolnshire ("Success") and Success claims a perfected lien on assets of the Debtor already subject to NBD's lien. The NBD loan agreement required that the Debtor receive and hold all of its inventory, and the proceeds from inventory sales, in trust. By this agreement, NBD also required the Debtor to keep a separate account of each item of inventory, to segregate the sales proceeds held in trust and to pay the proceeds to NBD. Using the jargon of the automobile financing industry, NBD provided "floor planning" financing and employed a "trust receipt" repayment device. According to Success, however, NBD failed to enforce its agreement with the Debtor and the Debtor withheld approximately $600,000 of trust proceeds from NBD. NBD, Success argues, allowed the Debtor to become "out of trust" in an effort to salvage NBD's loan and business relationship with the Debtor.

As of the date of the bankruptcy petition, the Debtor owed NBD in excess of $1,400,000, an amount that Success complains would have been less had NBD enforced its loan agreement with the Debtor. The Debtor, as a chapter 11 debtor in possession, sold its assets and franchise rights, free and clear of all lien rights, for an amount less than $1,400,000. To the extent valid and enforceable, the lien rights of NBD and Success attached to the proceeds of the sale.

In connection with this sale, NBD filed an adversary proceeding against the Debtor and Success to determine the validity and priority of NBD's lien. The Debtor asserted several affirmative defenses and also filed a counterclaim against NBD, seeking to void NBD's lien as a preference and recover all monies paid by the Debtor to NBD within one year of the bankruptcy filing. The Debtor, however, voluntarily dismissed its counterclaim against NBD based on the Debtor's belief that it could not prove insolvency under § 547(b) of the Bankruptcy Code. Success, too, filed a counterclaim against NBD. Count I alleges a voidable preference under § 547(b); Count II seeks to recover the property transferred preferentially under § 550; Count III seeks to disallow NBD's claim under § 502(d) and Count IV seeks to equitably subordinate NBD's claim. Success also filed a separate motion to prosecute Counts I, II and III of its counterclaim on the ground that the Debtor has refused to prosecute these claims. NBD objected to Success' motion to prosecute and filed the instant motion to dismiss Success' counterclaim based on lack of standing (Counts I and II) and failure to state a claim upon which relief may be granted (Counts III and IV).

## II. ANALYSIS

### A. Derivative Standing

Section 547(b) provides that "the *trustee* may avoid any transfer of an interest of the debtor in property" that meets the conditions of that section (emphasis added). Further, § 1107(a) states, with certain exceptions, that a debtor in possession shall have the powers, rights and duties of a trustee. Therefore, the debtor in possession or the trustee may avoid a preference.

Success, however, argues that it, too, has standing to avoid a preference because the Debtor, as debtor in possession, failed to bring suit. Success' argument is refuted by the text of § 547(b). A fundamental canon of statutory interpretation is that all such efforts "must begin[] with the language of the statute itself." *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). If the language is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms", *id.*, *quoting Caminetti v. United States*, 242

U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917), and any further inquiry is superfluous. *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030. Success does not suggest that the phrase "the trustee may avoid" as contained in § 547(b) is anything other than plain and unambiguous, nor does Success suggest that it is this Court's role to insert after "trustee" the words "or other entity". Interpreting § 547(c)(2), the Supreme Court noted that "the fact that Congress carefully reexamined and entirely rewrote the preference provision in 1978 supports the conclusion that the text of § 547(c)(2) as enacted reflects the deliberate choice of Congress." *Union Bank v. Wolas*, ⸻ U.S. ⸻, ⸻, 112 S.Ct. 527, 532, 116 L.Ed.2d 514 (1991). Similarly, the text of § 547(b) reflects the deliberate choice of Congress to limit standing to the trustee and, by way of § 1107, the debtor in possession [1].

Notwithstanding the lack of conferring language (or even an ambiguity) in § 547(b), courts have allowed individual creditors to use trustee avoiding powers in the name of the trustee for the benefit of the estate.[2] For example, in *Matter of Shelby Motel Group, Inc.*, 123 B.R. 98, 103 (N.D.Ala.1990), the court held that § 1109(b) implies the right of an individual creditor to initiate proceedings to attack voidable preferences and fraudulent transfers.[3] The court in *Shelby* based its decision on the reasoning found in *Matter of Joyanna Holitogs, Inc.*, 21 B.R. 323, 325 (Bankr.S.D.N.Y.1982), where the court declared: "[n]otwithstanding the absence in the Code of a plainly expressed grant giving a creditors' committee the standing said to have been implied in the 1898 Act, this court assumes that Congress did not intend to deny a debtor's creditors the opportunity to vindicate his and their rights for it could have said so clearly were it otherwise. Indeed, Section 1109(b) provides a strong foundation upon which such a principle should be built." According to the *Shelby* court, "just because the prosecuting entity in some of the decided cases is a creditors' *committee* instead of an *individual creditor* does not mean that the concept applies solely to committees." *Shelby* at 102 (emphasis in original). Section § 1109(b), however, does not speak in terms of permitting a creditor to exercise powers expressly reserved to the trustee; moreover, implying standing with § 1109(b) is in direct contravention to the plain and unambiguous provision of § 547(b). *See In re Wilson*, 77 B.R. 532, 535 (Bankr. W.D.Va.1987) (criticizing use of § 1109 to confer standing); *cf. Matter of James Wil-*

---

**1.** Success also argues that standing is implied by § 503(b)(3)(B), which allows as administrative expenses amounts incurred by "a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." Success similarly argues that a creditor's right to object to a claim under § 502(a), coupled with the right to bring an adversary proceeding to recover money or property under Rule 7001(1), confers standing to bring a preference action. But § 503(b)(3)(B) does not confer standing; it only authorizes recovery of expenses to a creditor who successfully recovered property, which is to say, a creditor who had standing in the first place. Further, the trustee or debtor in possession first must obtain a judgment under § 547 and § 550 before a creditor may object to a claim on the ground that the creditor has not returned an avoidable transfer. *See In re Prime Motor Inns, Inc.*, 135 B.R. 917, 921 (Bankr. S.D.Fla.1992) (creditor may have standing under § 502(a) if the trustee first avoids the preference and the preferred creditor fails to return property to estate).

**2.** *See* cases cited in *In re New York Intern. Hostel, Inc.*, 142 B.R. 90, 95 (Bankr.S.D.N.Y. 1992). As the case before this Court involves standing asserted by a single creditor, it is not necessary to address the issue of creditor committee standing, although much of the analysis in this opinion is applicable to creditor committee standing. It may be that § 1103(c)(5), with or without § 1109(b), is an appropriate basis for committee standing; however, this issue is not now before this Court. *See e.g., In re First Capital Holdings Corp.*, 146 B.R. 7, 12 (Bankr. C.D.Ca.1992) (creditor committee granted standing under § 1103(c)(5) when demand on debtor to proceed would be futile); *see also generally* Snider, *The Chapter 11 Creditors' Committee Right to Institute Suit*, 2 J.Bankr.L. & Prac. 779 (1992).

**3.** Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

son Associates, 965 F.2d 160, 169 (7th Cir. 1992) (§ 1109(b) only means that party has a right to be heard before the res in which it claims an interest is disposed).

Perhaps courts have resorted to § 1109(b) because of the perceived inequity of depriving creditors of the benefit of the trustee's avoiding powers. But it is *equity*, not the Code, that is the basis for allowing derivative standing to pursue the trustee's powers. Granting derivative standing on equitable principles is not new. In *Glenny v. Langdon*, 98 U.S. (8 Otto) 20, 27, 25 L.Ed. 43, 45 (1878), the Supreme Court found that "[a]uthority for a creditor to bring suit to recover the property or rights of property of the bankrupt, under any circumstances, is certainly not given in the Bankrupt Act ...; but the argument is, that it [derivative standing] is founded upon the enlarged principles of equity...." *See also Gochenour, et al. v. Geo. & Francis Ball Foundation, et al.*, 35 F.Supp. 508, 517, *aff'd.* 117 F.2d 259 (7th Cir.1941) (if, after bringing the matter to the attention of the trustee, the trustee fails to act, the creditors have the right to ask the court for leave to prosecute the action for and in the name of the trustee). The Seventh Circuit continues to recognize this equitable principle in Code cases. *See Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 203 (7th Cir.1988) (derivative standing possible "alternative route" open to creditor when debtor is "shirking his statutory responsibilities"); *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990) (citing factors for derivative standing when the trustee "unjustifiably refuses a demand to pursue the action"); *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir.1990) (derivative standing available if trustee does not adequately represent in-

terests of creditors). But in none of these cases has the Seventh Circuit held that such standing is conferred by·any section under the Code, including § 1109(b).[4]

The issue then is to determine under what circumstances, if any, it is appropriate for bankruptcy courts to resort to the equitable remedy of derivative standing. "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206–07, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988). In this regard, what was said by the Supreme Court in *Langdon* is instructive: "ample means are placed in the hands of creditors to enable them to inform the court of the necessity of any particular proceeding to be taken for that purpose [of protecting their rights]; to which it may be added that the power of the court to compel a compliance with any such order is plenary, and beyond all doubt; or if the assignee fails to do so, to punish him for contempt, or to remove him and appoint another in his place." *Langdon*, 98 U.S. (8 Otto) at 27, 25 L.Ed. at 46. Similarly, a creditor's attempt to exercise powers vested in the trustee implicates several provisions of the Code. These provisions should be considered in determining whether to grant the equitable remedy of derivative standing[5].

The debtor in possession is vested with essentially the same fiduciary duties as the trustee, *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 1995, 85 L.Ed.2d 372 (1985); therefore, cause may exist pursuant to § 1104(a)(1) for the appointment of a trustee when the debtor in possession

---

**4.** In *Perkins,* the court cited *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 247 & n. 14 (5th Cir.1988) and other cases for the factors to be used in determining whether to grant derivative standing. Although these cases implied standing by reason of § 1103(c) and § 1109(b), the Seventh Circuit did not so hold. *See also Matter of Monsour Medical Center,* 5 B.R. 715, 718 (Bankr.W.D.Pa.1980) (basis for derivative right to sue is equity, not Code); *In re McConnell,* 122 B.R. 41, 44 (Bankr.S.D.Tex.1989) (individual creditor granted standing, although

right not found in Code); *In re V. Savino Oil & Heating Co. Inc.,* 91 B.R. 655, 657 (Bankr. E.D.N.Y.1988) (same).

**5.** Indeed, the Code answers the rhetorical questions asked by the *Shelby* court before it granted an individual creditor derivative standing: "Who could be better to prosecute such claims on behalf of the debtor under § 1109(b) than a badly harmed creditor? If not First Alabama, who?" *Shelby* at 103. The answer: a trustee.

breaches this duty and unjustifiably fails to institute a suit to recover a voidable preference. *See e.g., Matter of Holly's Inc.*, 140 B.R. 643, 686 (Bankr.W.D.Mich.1992) (cause for appointment of trustee may exist when debtor breaches fiduciary duties); *cf. In re Haugen Const. Service, Inc.*, 104 B.R. 233, 240 (Bankr.D.N.D.1989) (cause may exist to remove a trustee under § 324(a) for failure to pursue preference action). If the court determines that the debtor's failure to prosecute a voidable preference action constitutes "cause" for appointment of a trustee under § 1104(a)(1), the court "shall order the appointment of a trustee".

Although a court may determine that a debtor in possession breached its fiduciary duty, the breach arguably may not be significant enough to constitute "cause" under § 1104(a)(1). *See Dalkon Shield Claimants v. A.H. Robins Co, Inc.*, 828 F.2d 239, 242 (4th Cir.1987). In such event, the court should determine whether the appointment of a trustee is in the interest of creditors under § 1104(a)(2). *See In re Tel–Net Hawaii, Inc.*, 105 B.R. 594, 595 (Bankr.D.Hawaii 1989) (appointment of trustee deemed in best interest of estate when the debtor failed to make any effort to avoid preferential transfers because of conflicts of interest).

If appointed pursuant to § 1104(a)(1) or (a)(2), the trustee would be obligated to bring the action, absent a change in circumstances. It should be a rare case where a court will find cause to order the appointment a trustee (such as a breach of fiduciary duty), have a trustee appointed and then face a trustee who refuses to bring the action that formed the basis for appointment in the first instance. Even then, the creditor has additional remedies, such as petitioning the court to compel the trustee to act, to sanction the trustee for contempt, or to remove the trustee and request appointment of another.

If grounds for the appointment of a trustee are not apparent, creditors may request the appointment of an examiner pursuant to § 1104(b)(1) to investigate allegations of misconduct that, if proven, could constitute cause for the appointment of a trustee. Furthermore, § 1106(b) expressly authorizes the court to allow the examiner to perform other duties of the trustee that the court orders the debtor in possession not to perform. This provision permits the court to carve away from the debtor in possession's authority granted under § 1107(a), without the need for appointment of a trustee and its concomitant effects on the administration of the estate. This broad grant of authority may include allowing the examiner the discretion to avoid a preference [6].

The court, however, only should order the appointment of an examiner pursuant to § 1104(b)(1) when the appointment is in the interest of the estate. When the court is making this determination (or determining whether to order appointment of a trustee under § 1104(a)(2)), it may make some sense to talk in terms of a cost-benefit analysis. *See e.g., In re Cardinal Industries, Inc.*, 109 B.R. 755, 766 (Bankr. S.D.Ohio 1990); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525–26 (Bankr.E.D.N.Y.1989) (cost-benefit analysis appropriate under § 1104(a)(2), not 1104(a)(1)). At this point, whether under § 1104(a)(2) or § 1104(b)(1), "[t]he choice between remedies requires a balancing of the costs and benefits of the alternatives." *Walgreen Company v. Sara Creek Property Company, B. V., et al.*, 966 F.2d 273, 275 (7th Cir.1992). In essence, the court has the discretion under these sections to order the appointment of a trustee or examiner, or to permit third party derivative standing, whichever remedy is deemed in the better interest of the estate. *See In re STN Enterprises*, 779 F.2d 901, 905 (2nd Cir.1985) (court must make cost-benefit

---

6. *See Williamson v. Roppollo*, 114 B.R. 127, 129 (W.D.La.1990) (examiner given authority to recover preferences and fraudulent conveyances); *In re Franklin–Lee Homes, Inc.*, 102 B.R. 477, 480 (E.D.N.C.1989) (same); *compare In re Madi-* son Management Group, Inc., 137 B.R. 275, 283 (Bankr.N.D.Ill.1992) (court authorized appointment of "trustee with limited powers to investigate").

analysis is determining whether to appoint trustee or to allow committee to sue)[7].

Unfortunately, some courts have conferred derivative standing upon a showing that the debtor in possession unjustifiably refused to bring suit, without a meaningful discussion of why the remedial provisions of the Code do not provide sufficient remedies. *See e.g. First Capital Holdings*, 146 B.R. at 11–12 (court, drawing from corporate derivative suits, allowed standing upon a showing that demand on the debtor would be futile). Perhaps this absence is explained by the literal language of § 1104 that suggests a court may not raise these issues sua sponte. It seems more appropriate, however, for the court to use § 105(a) to effectuate the Code as written, *see e.g., In re UNR Industries, Inc.*, 72 B.R. 789, 795 (Bankr.N.D.Ill.1987), than to use § 105(a) to grant derivative standing. *See also In re Public Service Company of New Hampshire*, 99 B.R. 177, 182 (Bankr. D.N.H.1989) (court may appoint examiner sua sponte); *cf. Wilson*, 77 B.R. at 535 (questioning derivative standing when creditors have remedies provided by § 1104).

 Applying the foregoing, Success cannot maintain Counts I, II and III of its counterclaim against NBD. Success asserts that it should be able to stand in the shoes of the Debtor to pursue a voidable preference against NBD because the Debtor voluntarily dismissed its preference action against NBD. Success does not allege

that Debtor breached its fiduciary duty in doing so. In fact, Success admits that "it is impossible for creditors to determine whether the Debtor's abandonment of its own adversary proceeding is justified where the Debtor fails to comply with discovery...." (Success' Reply Memorandum at 8). Success feels that *maybe* there is a cause of action out there that could be asserted for its benefit. So, in order to "see if a fire rages" (Success' Reply Memorandum at 12), Success filed Counts I, II and III. To Success, it may appear as though it is caught in a procedural catch–22. It has no standing because it cannot show that Debtor unjustifiably refused to bring a voidable preference action—but, it cannot seek discovery on Counts I, II and III to prove such unjustified refusal if it has no standing. Success has a remedy, however. Success is entitled to file a motion for the appointment of an examiner pursuant to Bankruptcy Rules 2007.1(a) and 9014. Therefore, Success lacks standing to bring Counts I and II and, because Count III depends upon Counts I and II, fails in Count III to state a claim upon which relief may be granted.

### B. Equitable Subordination

 Count IV of Success' counterclaim alleges a claim for equitable subordination under § 510. The Seventh Circuit has ruled that creditor standing under § 510 is not · derivative; "individual creditors have an interest in subordination sepa-

---

7. *STN Enterprises* suggested that allowing derivative standing can save the estate attorneys' fees and trustee's compensation and protect a meaningful reorganization from disruption. These "benefits" are unclear. Fees and expenses may be deemed recoverable under § 506(c), or interested creditors may volunteer their funds upfront, *Vitreous Steel*, 911 F.2d at 1231; moreover, it is questionable whether a debtor in possession should be entitled to the benefits of being in possession without the burdens of exercising its fiduciary duties. In contrast, there are distinct costs to permitting derivative standing, such as creditor conflicts of interest (absent with a trustee or examiner), potential for spiteful, dilatory or wasteful litigation tactics, and the risk of side deal settlements. The mirror image of these "costs" are "benefits" of appointing an independent examiner or trustee. Moreover, there may be additional reason to appoint an examiner. Instead of requiring the court to

engage in the administrative functions of analyzing and authorizing lawsuits, an examiner may be appointed to investigate the issue and determine whether or not to bring suit. If the examiner determines that a suit is justified, the court is not involved in this administrative decision. If the examiner determines that a suit is not justified, the discovery by the examiner may satisfy the needs of the creditors. If the creditors are not satisfied, they can challenge the examiner's decision. Further, after appointment of the examiner, there may be no additional reason for the appointment of a trustee. *See In re Official Creditors' Committee v. Liberal Market*, 13 B.R. 748, 752 (Bankr.S.D.Ohio 1981) (examiner served function of independent fiduciary). Therefore, while the court has the discretion to grant derivative standing as acknowledged by the Seventh Circuit, careful consideration should be given to determine if it is truly warranted.

rate and apart from the interests of the estate as a whole." *Vitreous Steel*, 911 F.2d at 1231. In order to equitably subordinate a priority claim of a secured creditor, the court must find: (1) inequitable misconduct, (2) injury to the movant, or unfair advantage to the miscreant, caused by the misconduct, and (3) subordination consistent with the other provisions of the Code. *In re Aluminum Mills Corp.*, 132 B.R. 869, 893 (Bankr.N.D.Ill.1991), *citing Vitreous Steel*, 911 F.2d at 1237[8]. Absent evidence of overreaching, "the doctrine of equitable subordination may not be used to impose obligations on parties above what they have agreed to." *Matter of EDC, Inc.*, 930 F.2d 1275, 1282 (7th Cir.1991); *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1356 (7th Cir.1990). Further, because there generally is no duty of "kindness" among nonfiduciaries, mere enforcement of contract rights will not give rise to a claim for equitable subordination. *Id.* at 1357.

While Success initially alleged that NBD was a party to fraudulent conduct by the Debtor, Success has limited its allegation to mere "overreaching". (Success' Reply Memorandum at 11.) NBD's overreaching, according to Success, occurred when NBD refrained from enforcing the trust receipt provisions of NBD's loan agreement with the Debtor. Paragraph 20 of Count IV alleges that "NBD's actions in allowing the Debtor to become 'out of trust' and to allow the amount converted by the Debtor to grow allowed NBD to gamble the value of the Debtor's business, and Success's equity cushion, in an attempt to salvage NBD's own feared losses or loss of the [sic] NBD's business relationship with the Debtor." Success alleges that it had a right to rely on NBD's enforcement; but, NBD permitted the Debtor to fall delinquent.

If it is not overreaching to enforce security interests upon default, *EDC*, 930 F.2d at 1282, or to terminate lines of credit, *Kham & Nate's*, 908 F.2d at 1358, then

NBD's *failure* to enforce its loan agreement more likely is "underreaching". *See In re Badger Freightways, Inc.*, 106 B.R. 971, 979 (Bankr.N.D.Ill.1989) (creditor's conduct in honoring overdrafts and not immediately calling for payment was generous, not egregious); *see also Aluminum Mills Corp.*, 132 B.R. at 896 (non-fiduciary may act strategically to protect itself to the potential detriment of others). Stripped of its colorful language, Count IV asks this court to equitably subordinate NBD's claim based on conduct that, if true, amounts to forbearance and an attempted workout with the Debtor. NBD owes no duties to Success, notwithstanding Success' assertion that it is customary in the automobile industry for junior lenders to rely on enforcement of floor planning financing by senior lenders. *Kham & Nate's*, 908 F.2d at 1358 (bank need not put interests of other creditors ahead of bank's interests). Custom and practice supplement contracts, not make them. If Success wanted to know when the Debtor was in default under NBD's loan documents, Success should have negotiated for that right with either the Debtor or NBD, or both. In fact, an inter-creditor agreement between Success and NBD is precisely the place for Success to bargain for the protection it now seeks.

Illinois U.C.C. § 9–205 buttresses this conclusion. This section reverses the rule pronounced in *Benedict v. Ratner*, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1924), that floating security interests are void and fraudulent where the debtor is given unfettered discretion to dispose of collateral without accounting for proceeds. Section 9–205 provides that "[a] security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral . . ., or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral." Ill.Rev.Stat. Ch. 26, § 9–205. This section

---

8. Although the Seventh Circuit stated that "it is not necessarily required that the creditor be found to have engaged in misconduct", *Vitreous Steel* 911 F.2d at 1237, the court in *Aluminum Mills* correctly reasoned that circumstances where misconduct is necessary include challenges to non-penalty claims of secured creditors. *Aluminum Mills*, 132 B.R. at 894.

protects the priority of a floor planning financier who employs the trust receipt device but who does not enforce the trust receipt provisions. *See Grain Merchants of Ind., Inc. v. Union Bank & Sav. Co.,* 408 F.2d 209 (7th Cir.1969), *cert. den. sub nom., France v. Union Bank & Sav. Co.,* 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969). Success seeks to subordinate NBD for failing to police the Debtor's conduct; however, "[p]utting such a duty [to police collateral and proceeds] on a secured party would severely undercut significant values of certainty, efficiency and reliance which are at the heart of the Codal emphasis on public filing." *Farns Associates, Inc. v. South Side Bank,* 93 Ill.App.3d 766, 772, 49 Ill.Dec. 128, 133, 417 N.E.2d 818, 823 (Ill.App. 1st Dist.1981). Therefore, § 9–205 implies a duty on the part of Success to protect its own interests, not a duty of NBD to police the Debtor's activities.

Success is urging this Court to disregard the lack of any agreement between NBD and Success. Given that Success is deemed aware of § 9–205 and that Success failed to bargain otherwise with NBD, there would be nothing equitable in subordinating the priority of NBD's lien. Therefore, Count IV fails to state a claim upon which relief may be granted.

## III. CONCLUSION

For the foregoing reasons, by separate order NBD's Motion to Dismiss has been granted and Success' Motion to Prosecute Countercomplaint has been denied.