**In re PATTON'S BUSY BEE DISPOSAL SERVICE, INC., Debtor.**

**Robert E. WELD, Examiner, on Behalf of PATTON'S BUSY BEE DISPOSAL SERVICE, INC., Plaintiff,**

v.

**ROBERT A. SWEENEY AGENCY, INC., Laverne E. Patton, Sr., Laverne E. Patton, Jr., and Timothy Patton, Defendants.**

**Bankruptcy No. 90–13427 B.**
**Adv. No. 93–1182 B.**

United States Bankruptcy Court,
W.D. New York.

May 26, 1995.

Hodgson, Russ, Andrews, Woods & Goodyear (Cheryl R. Storie, of counsel), Buffalo, NY, for plaintiff/examiner.

Hiscock & Barclay (Laura M. Harris, Drew V. Tidwell, of counsel), Buffalo, NY, for defendant Robert A. Sweeney Agency, Inc.

Penney, Maier, Mandel, Wallach & Crowe (Mark S. Wallach, of counsel), Buffalo, NY, for defendant Laverne E. Patton, Jr.

Brown & Kelly (David S. Zygaj, of counsel), Buffalo, NY, for defendant Timothy Patton.

CARL L. BUCKI, Bankruptcy Judge.

The examiner for Patton's Busy Bee Disposal Service, Inc., commenced this adversary proceeding to recover various insurance premiums that the debtor paid to Robert A. Sweeney Agency, Inc. These payments allegedly included unauthorized postpetition advances on account of prepetition obligations, payments for the benefit of parties other than the debtor, prepetition preferences, and overpayments that are now subject to refund. Altogether, the examiner asserted ten causes of action in this proceeding. Defendants are the Sweeney Agency and three of the debtor's insiders, namely, Laverne E. Patton, Sr., Laverne E. Patton, Jr., and Timothy Patton. In addition, certain defendants have asserted cross-claims against each other. The matter is now before this Court on multiple motions, including applications for summary judgment and to dismiss various causes of action. Because only the dismissal motion presents issues of general interest, this Court has addressed the other pending matters in a separate opinion.

Patton's Busy Bee Disposal Service, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code on November 15, 1990. Subsequent to that date, the debtor continued to operate its waste removal and landfill business as a debtor-in-possession. On October 21, 1991, the Office of the United States Trustee moved either to dismiss or to convert this case. In its papers, the U.S. Trustee contended that the debtor had incurred losses during the pendency of Chapter 11, that it had transferred funds to an affiliated entity, that it was unable to propose a feasible Plan of Reorganization, and that its officers and counsel had failed to attend regularly scheduled meetings of creditors. Never-

theless, it appeared that the debtor might be a viable entity whose assets would have value as a going concern. Due to environmental problems, however, the potential for personal liability precluded the appointment of an operating trustee. Recognizing both the need to impose some additional safeguards and the benefits of continued business operations, the Court allowed the corporation to remain as a debtor-in-possession, but with the assignment of certain responsibilities to an examiner.

In its Order dated March 30, 1992, this Court approved the appointment of Robert E. Weld, C.P.A., to serve as examiner "to investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's waste hauling business and the desirability of the continuance or sale of such business, and any other matter relevant to the case or to the consummation of a sale." Shortly thereafter, at the request of the Office of the United States Trustee, this Court authorized an expansion of the examiner's powers, to enable him to solicit bids for the sale of the debtor's assets. Pursuant to the examiner's recommendations, the estate ultimately sold all of its operating assets. Upon completion of these sales, the examiner himself moved for a second expansion of authority. In its Order dated February 26, 1993, this Court granted to Mr. Weld the following:

1. All avoidance powers set forth in Sections 544, 547, 548 and 549 of the Bankruptcy Code, including, without limitation, the power to initiate adversary or other proceedings necessary to enforce such powers either in his own name on behalf of the Bankruptcy Estate or in the name of the debtor, in Order to recover property of the Bankruptcy Estate; and

2. The power to review and object, where appropriate, to all claims against the Bankruptcy Estate and to initiate adversary or other proceedings to disallow such claims.

Pursuant to this authority, the examiner has commenced a number of adversary proceedings, including the present action.

Robert A. Sweeney Agency, Inc., is an insurance broker which arranged coverage for the debtor, for a principal of the debtor, and for an affiliated corporation known as Railroad Valley Recycling, Inc.[1] The examiner's complaint seeks to recover payments that the debtor made to the Sweeney Agency in the form of cash or services, having a combined value of at least $141,595.72. Of this amount, payments totalling at least $72,100 were applied to charges for insurance issued for the benefit of either a principal or Railroad Valley Recycling, Inc. The examiner claims that the Sweeney Agency has yet to properly credit payments totalling $10,728.92. The balance represents moneys paid for the debtor's benefit, but either within 90 days of its bankruptcy filing or post petition on account of prepetition liabilities. In the first, second, and ninth causes of action, the examiner asserts that the Sweeney Agency violated the automatic stay by reason of its efforts to collect monies from the debtor. The third, fourth, and sixth causes of action seek to recover postpetition payments for insurance provided to either a principal or Railroad Valley Recycling, Inc. The third cause of action alleges that these transfers constitute a fraudulent conveyance under 11 U.S.C. § 548 and the New York Debtor and Creditor Law, while the fourth cause of action asserts a violation of section 549 of the Bankruptcy Code, and the sixth cause of action alleges that these purported payments involve estate assets that are subject to turnover under 11 U.S.C. § 542. The fifth cause of action alleges the preferential character of payments that the debtor made on account of its own obligations during the 90 days prior to bankruptcy filing. In the seventh cause of action, the examiner seeks to void prepetition transfers for the benefit of Railroad Valley Recycling, Inc., as a fraudulent conveyance under section 548 of the Bankruptcy Code. The eighth cause of action asserts that the individual defendants breached their fiduciary duties by authorizing the transfers described in the preceding causes of action. Finally, the tenth cause of action looks to recover payments that the Sweeney Agency has not yet credited to the debtor's account. Seeking to resolve or at least to narrow the complex issues which this litigation presents, the parties have filed the motions now under consideration. Despite the extensive and at times complicated argument, the resolution of this matter hinges principally upon only two areas of dispute: the authority of the examiner to commence this litigation and the application of the statute of limitations.

I. *Authority of Examiner*

Robert A. Sweeney Agency, Inc., challenges the authority of an examiner to commence the present litigation. Not being scheduled as a creditor, this defendant received no notice of the prior applications to expand the examiner's powers. At liberty to collaterally attack the grant of authority, it contends that the powers of an examiner are limited to investigative and reporting functions and may not expand to encompass the other powers of a trustee. The defendant notes that an examiner may not later serve as trustee, 11 U.S.C. § 321(b), and that a trustee may not even employ an examiner who has served in the case, 11 U.S.C. § 327(f). From these limitations, the defendant would infer that Congress intended that trustee powers flow only to those who fulfill the full range of trustee responsibilities.

 The position of examiner is not a device to circumvent the appointment of a trustee. This Court agrees with those judges who have looked askance upon attempts to cloak an examiner with all of the attributes of a trustee other than title. *See, e.g., In re International Distribution Centers, Inc.*, 74 B.R. 221 (S.D.N.Y.1987). Far different is the limited assignment of some trustee responsibilities to an examiner selected in the context of special circumstances and to whom the court grants powers of reasonable scope.

*Duty v. Authority*

 In their arguments, the parties fail to distinguish the concepts of duty and responsibility from the concepts of power and

1. Railroad Valley Recycling, Inc., filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 15, 1990. The trustee thereafter submitted a no-asset report, and the case was closed on November 25, 1992.

authority. The existence of an obligation does not necessarily command the use of any particular means to fulfill that obligation. For example, the duty to safeguard an interest does not necessarily empower the obligor to commence an action. Rather, a plaintiff must possess authority to employ litigation as an appropriate exercise of responsibility. For such creatures of this Court as examiners and trustees, this authority must derive either from the Bankruptcy Code itself or from an order of this Court.

■ The Bankruptcy Code carefully defines the responsibilities and powers of a trustee. Section 1106(a) sets forth seven duties of a trustee. Apart from this provision are grants of authority, such as those contained in section 323. Subdivision (b) of this section provides that "[t]he trustee in a case under this title has capacity to sue and be sued." In contrast, the Code assigns far more limited responsibility to an examiner and contains no clear authorization for the examiner's commencement of an adversary proceeding.

Subdivision (b) of section 1106 specifies the responsibilities of an examiner. In all instances, these include two of the seven duties assigned to a trustee under 11 U.S.C. § 1106(a). As with a trustee, the code requires that an examiner "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor," 11 U.S.C. § 1106(a)(3), and that the examiner file a statement of any such investigation, 11 U.S.C. § 1106(a)(4). In addition, an examiner "shall perform, . . . . except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor-in-possession not to perform." Pursuant to section 1106(a)(1), these other duties may include the obligation specified in 11 U.S.C. § 704(2), to "be accountable for all property received."

Property of an estate includes any causes of action which might be asserted on behalf of the debtor-in-possession. Had this court ordered the debtor-in-possession not to account for such causes of action, this duty would have passed to the examiner pursuant to the provisions of 11 U.S.C. § 1106(b), § 1106(a)(1), and § 704(2). Instead, the Order of February 26, 1993, speaks only in terms of a positive grant of authority to the examiner. Nonetheless, the pleadings clearly indicate the concern that the debtor-in-possession might not commence this litigation, particularly insofar as it sought recovery from insiders. This Court is satisfied that the intent of the judge at that time was to preempt the debtor's administration of these causes of action and thereby to assign that responsibility to the examiner. Accordingly, the Court hereby corrects the Order of February 26, 1993, *nunc pro tunc*, to reflect that intent.

■ A duty to account for causes of action does not necessarily authorize the commencement of adversary proceedings. In this regard, the powers of an examiner are similar to those of a creditors' committee. In *In re STN Enterprises*, 779 F.2d 901, 904 (2nd Cir.1985), the Court of Appeals recognized that the Bankruptcy Code contains "no explicit authority for creditors' committees to initiate adversary proceedings." Rather, the court found "that 11 U.S.C. §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court." *Id.* at 904. For examiners, a similar implication derives from sections 1106 and 1109. Section 1109(b) recognizes a right to sue by any party in interest, including a trustee. In the present context, where the examiner has assumed certain duties of a trustee, that examiner is a party in interest as to the obligations that are so assumed. In assigning these responsibilities, section 1106(b) recites not merely the existence of duties, but that the examiner shall "perform" them. As in *In re STN Enterprises*, therefore, the examiner may commence an action with the approval of this Court. The Order of February 26, 1993, constitutes such an approval.

■ The Order of February 26, 1993, authorized the examiner to initiate adversary proceedings to enforce avoidance powers, such as those set forth in sections 544, 547, 548 and 549 of the Bankruptcy Code. Counsel for the Sweeney Agency correctly observes that the examiner's complaint includes six causes of action that are unrelated to any avoidance power. These include the first,

second and ninth causes of action based upon a violation of the automatic stay under 11 U.S.C. § 362, the sixth cause of action for a turnover of assets pursuant to 11 U.S.C. § 542, and the tenth cause of action for return of overpayments. Subject to a similar impediment is the Eighth Cause of Action against Laverne E. Patton, Sr., Laverne E. Patton, Jr., and Timothy Patton, to recover damages arising from an alleged breach of fiduciary duty. In response, the examiner proposes that the Court's prior authorization be expanded, *nunc pro tunc*, to include the prosecution of these additional claims.

■■■■■ This Court is not at liberty to cavalierly unwind the passage of time. Relief is to be granted on a *nunc pro tunc* basis only under the most limited of circumstances, not to do something new or additional, but only to correct that which was to have been done at the earlier occasion. The appropriate standard was well stated by the New York Court of Appeals in its decision in *Mohrmann v. Kob*, 291 N.Y. 181, 186, 51 N.E.2d 921 (1943):

> The function of orders *nunc pro tunc* is to correct irregularities in the entry of judicial mandates or like procedural errors.... "When a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination." *Merrick v. Merrick*, [266 N.Y. 120, 122, 194 N.E. 55] [ (1934) ]. However, ... "[a] court has no power to have a new order or ruling so entered, thus bringing into the record an element which did not previously exist."

*Nunc pro tunc* relief is appropriate to correct a mistake in the grant of intended authority, but not to expand the authority that both the court and litigants intended. For this reason, as indicated above, this Court may revise the Order of February 26, 1993, *nunc pro tunc*, to confirm the prior intent to

preclude the debtor-in-possession from exercising the trustee's duty to account for avoidance claims. However, the plaintiff demonstrates no error in the order's stated scope, to address only the authority to pursue avoidance recoveries.

This Court is satisfied that the concern of Judge McGuire at the time of his signing of the Order of February 26, 1993, was to assure the diligent prosecution of actions to avoid transfers for which the debtor's principals were themselves responsible. Surely, these principals might be reluctant to pursue such claims. In contrast, the basis for an action under section 362 is the conduct of creditors. Similarly, causes of action to recover overpayments or for a turnover of assets focus upon the creditor's refusal to account, rather than upon the debtor's voluntary payment.

The cause of action to recover damages for a breach of fiduciary duty does arise from the same conduct as do the examiner's avoidance claims. For many of the same reasons, the debtor-in-possession might have been unlikely to prosecute this matter. Perhaps its duplicative character caused the examiner to seek authority only to pursue avoidance proceedings. Nonetheless, for whatever reason, no one ever requested that this responsibility be taken from the debtor-in-possession and be reassigned to the examiner.

By all indications, the Order of February 26, 1993, was intended only to authorize avoidance proceedings. This Court may not expand that authority, *nunc pro tunc*, to include other causes of action for which authority was not intended at the time of the order. Accordingly, the first, second, sixth, eighth, ninth and tenth causes of action are dismissed.[2]

## II. *Statute of Limitations*

■■■ The Sweeney Agency argues that statutes of limitation preclude the examiner's prosecution of four of its claims. Three of the causes of action are based upon sections 544, 547 and 548 of the Bankruptcy Code, and thereby implicate the limitations of sec-

**2.** Nothing in this decision would preclude a trustee or even the debtor-in-possession from asserting these claims in a future adversary proceeding, subject, of course, to any limitations which might affect the right of recovery. Indeed, this responsibility rests with the trustee or debtor-in-possession, unless the debtor-in-possession is precluded by order of this court.

tion 546(e). The examiner bases the Fourth Cause of Action upon section 549, which contains its own limitations provision.

In the form applicable to cases filed prior to October 22, 1994, section 546(a) provides that actions or proceedings under sections 544, 547 and 548 "may not be commenced after the earlier of—(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or (2) the time the case is closed or dismissed." In the present instance, the examiner commenced this adversary proceeding on July 1, 1993. This occurred more than two years after the debtor filed its petition for relief on November 15, 1990, but less than two years after the examiner's initial appointment on March 30, 1992. The defendants contend that the debtor-in-possession holds the status of a trustee, and that therefore, the statute of limitations ran from the date of filing. The examiner claims that the limitations period commenced anew upon his appointment, or alternatively, that principles of equitable estoppel should toll its running.

In the Second Circuit, any analysis of the limitations period in section 546(a) must begin with the recent decision of the Court of Appeals in *In re Century Brass Products, Inc.*, 22 F.3d 37 (2nd Cir.1994). Like the present debtor, Century Brass Products, Inc., had been a debtor-in-possession under Chapter 11. However, the bankruptcy court had confirmed a liquidating plan under which the court was to retain jurisdiction over disputed matters. At issue was whether the limitations period applied to actions commenced by the administrator of the reorganization plan. Noting that 11 U.S.C. § 1107(a) extended to the debtor-in-possession both the powers and limitations of a trustee, the court held that the two year period began upon the filing of the Bankruptcy petition. Because no trustee had ever been appointed in the case, the Court declined to decide whether the appointment of a trustee might have

reviewed a cause of action that had expired.[3] *Id.* at 41.

Under the holding in *In re Century Brass Products, Inc., id.*, the limitations period of section 546(a) commenced with the bankruptcy filing by Patton's Busy Bee Disposal Service, Inc., and had already expired when the examiner began his action seeking judgment under sections 544, 547 and 548 of the Bankruptcy Code. Even if the appointment of a trustee could have revived the causes of action, the examiner is simply not a trustee. Rather, as noted above, any duty to pursue such claims would represent an assignment of a responsibility that the Court directs the debtor-in-possession not to perform. 11 U.S.C. § 1106(b). Unlike a trustee, who must independently perform the duties set forth in section 1106(a), an examiner merely assumes authority that would otherwise have rested with the debtor-in-possession. Accordingly, any limitations period must refer to the debtor-in-possession, whose responsibility the examiner now seeks to fulfill. Because that responsibility arose upon the bankruptcy filing, that date must continue as the reference point for commencement of the limitations period.

The examiner urges reliance upon the decision of the District Court in *Strell v. Weston (In re Sandra Cotton, Inc.)*, No. 88-1013E, 1989 WL 98851 (W.D.N.Y. Aug. 18, 1989), which held that the limitations period of section 546(a)(1) begins anew upon the appointment of a trustee after conversion of a case from Chapter 11 to Chapter 7. We need not consider the continued vitality of this holding in light of the Second Circuit's decision in *In re Century Brass Products, Inc.* Rather, it suffices to note that the district court expressly predicated the *Cotton* decision upon the conversion to Chapter 7, that being a circumstance which has not yet occurred in the present case. Indeed, as Judge Elfvin acknowledged, "[i]t would be a different situation were a new trustee ap-

---

**3.** As to cases filed after October 22, 1994, the recent amendments to the bankruptcy code have resolved this issue. Pursuant to the revised section 546(a), unless a case has been earlier closed or dismissed, such proceedings may not be commenced after "the later of—(A) 2 years after the entry of the Order for relief; or (B) 1 year after

the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A)." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 216, 108 Stat. 4106 (1994).

pointed within the same Chapter and then that trustee attempted to commence an action more than two years after the appointment of his predecessor trustee. It is that scenario which the statute would clearly prohibit." 1989 WL 98851, at *3. Therefore, even under the *Cotton* holding, a Chapter 11 trustee would have been subject to the same limitations period as his predecessor trustee, the debtor-in-possession. Surely an examiner can claim no greater rights.

 More generally, the purpose of a statute of limitations is to put an end to the prospect of litigation and to protect parties from the cost and risk of defending ancient claims. Prior to October 22, 1994, the Bankruptcy Code reflected the view that two years was a reasonable period in which to subject parties to the prospect of avoidance litigation. The underlying rationale for a limitations period is the same, whether or not an examiner is appointed. The completion of that limitations period, therefore, should occur at the same time in either case.

 The defendants also contend that the statute of limitations precludes the examiner from fully asserting his Fourth Cause of Action to recover postpetition transfers not authorized under 11 U.S.C. § 549. Subdivision (d) of this section states that such an action "may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time that the case is closed or dismissed." This limitation refers only to the date of transfer, without regard to the appointment of a trustee. The date of transfer being determinative, no basis exists to renew the cause of action upon the appointment of the examiner.

 The examiner contends that principles of equitable estoppel should toll any period of statutory limitation. Fundamentally, equitable estoppel applies "where, because

of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact." 28 Am. Jur.2d, *Estoppel and Waiver*, § 27 (1966). The Third, Fourth, Fifth and Seventh Causes of Action seek to avoid transfers made to Robert A. Sweeney Agency, Inc.[4] Thus, any equitable estoppel must relate to this defendant. With respect to the cause for delay in commencement of the adversary proceeding, the examiner cites no improper conduct that is attributable to the Sweeney Agency. References to misrepresentations by the debtor are of no consequence. Absent an allegation that the Sweeney Agency somehow contributed to the misrepresentations, the examiner provides no basis to estop this defendant from asserting the intended protection of the statute of limitations.

By reason of the limitations contained in section 546(a), the Third, Fifth and Seventh causes of action should be dismissed *in toto*. The parties appear to agree that of the $72,100 that the debtor transferred postpetition, transfers totaling $51,677 occurred more than two years prior to commencement of the adversary proceeding. Accordingly, the Fourth Cause of Action is dismissed to the extent that it seeks to recover transfers made prior to July 1, 1991, that date being two years prior to the filing of the present adversary proceeding.

So Ordered.

---

**4.** In part, the Third and Fourth causes of action seek to recover transfers to the Sweeney Agency for the benefit of Laverne E. Patton, Sr. If the liability of this individual were now at issue, his misrepresentations might have collaterally estopped a defense based upon statutes of limitations. However, Laverne E. Patton, Sr. has failed to answer and has not appeared on the present motions. Nothing in this decision precludes the examiner from taking a default judgment against Laverne E. Patton, Sr., or from arguing equitable estoppel if such default should ever be vacated. Because the transfers were not made to or for the benefit of Laverne E. Patton, Jr., or Timothy Patton, avoidance proceedings would not produce a recovery from these individuals. Accordingly, the wrongfulness of their conduct would be relevant, if at all, only to a statute of limitations affecting cross-claims or other causes of action.