**In re W.R. GRACE & CO., et al., Debtors.**

**Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co., et al., Plaintiffs,**

v.

**Sealed Air Corporation and Cryovac, Inc., Defendants.**

**Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co., et al., Plaintiffs,**

v.

**Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc., Defendants.**

**Bankruptcy Nos. 01–1139 to 01–1200. Adversary Nos. 02–2210, 02–2211.**

United States Bankruptcy Court, D. Delaware.

Oct. 24, 2002.

David W. Carickhoff, Jr., Laura Davis Jones, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, Scotta Edelen McFarland, Pachulski Stang Ziehl Young & Jones PC, Los Angeles, CA, for debtor.

Marla Rosoff Eskin, Campbell & Levine, LLC, Wilmington, DE, Mark T. Hurford, Campbell & Levine, LLC, Wilmington, DE, Aileen F. Maguire, Campbell & Levine, Wilmington, DE, Rick S. Miller, Ferry & Joseph, Wilmington, DE, Theodore J. Tacconelli, Ferry & Joseph P.A., Wilmington, DE, Matthew G. Zaleski III, Campbell & Levine LLC, Wilmington, DE, for plaintiffs.

Kevin F. Brady, Skadden Arps Slate Meagher & Flom LLP, Wilmington, DE, Mark S. Chehi, David R. Hurst, Patricia A. Widdoss, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Christopher Martin Winter, Morris Nichols Arsht & Tunnell, Wilmington, DE, for defendants.

Jerel L. Ellington, Denver, CO, James Donald Freeman, Denver, CO, for creditor.

Teresa K.D. Currier, Klett Rooney Lieber & Schorling, Wilmington, DE, Jeffrey R. Waxman, Klett Rooney, Wilmington, DE, for Official Committee of Equity Security Holders.

### OPINION

WOLIN, District Judge.

This matter has been opened before the Court upon the several motions of the parties. Defendants Seal Air Corporation and Cryovac, Inc., have moved to dismiss the above-captioned adversary proceeding against them, docket number 02–2210 ("hereinafter the 'Sealed Air Matter'"). The debtor, W.R. Grace & Company-Conn., moves for an Order of Appointment of an Examiner or "Limited Trustee" to prosecute the adversary proceeding. The Official Committee of Equity Security Holders (the "Equity Committee") moves for the same relief. The Official Committee of Asbestos Personal Injury Claimants (the "Personal Injury Committee") moves for an Order of Appointment for a Trustee with normal powers not limited as in the debtor's motion. The Official Committee of Asbestos Property Damage Claimants (the "Property Damage Committee") moves for a Order resetting the Sealed Air Matter for trial and barring further participation in the adversary proceeding by the debtor. Finally, Fresenius Medical Care Holdings, Inc., and National Medical Care, Inc., defendants in the consolidated matter docketed 02–2211 (hereinafter the "Fresenius Matter"), ask that whatever the Court orders in the Sealed Air Matter also be granted in their case, and that the Court subsequently renew the stay currently in effect with regard to the Fresenius Matter.

For the reasons set forth below, the Court will grant the motion of the Property Damage Committee in part and deny it in part. Each of the other motions will be denied. Also still pending is the Court's own Order to Show Cause, dated October 2, 2002, which will be vacated. Finally, the Court will grant a certificate for interlocutory appeal under 28 U.S.C. § 1292(b).

### BACKGROUND

A number of similes and metaphors have been advanced to the Court to describe the effect upon these proceedings of the Third Circuit Court of Appeals' opinion titled *The Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 304 F.3d 316 (3d Cir.2002)("*Cybergenics II*"), and some have occurred to the Court, *sua sponte.* It is at once more persuasive

and less susceptible to cliché to recount in literal terms the impact of that opinion on this case, on the efforts of counsel and the Court, and upon this chapter 11 proceeding as a whole.

Stated verily, the *Cybergenics II* opinion held that an official creditors committee in a chapter 11 case lacks derivative capacity to sue an alleged transferee of a fraudulent conveyance under 11 U.S.C. § 544. Section 544(b)(1) states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." The Court of Appeals held that the words "the Trustee may" means that *only* a trustee (or a debtor-in-possession) may prosecute a section 544 avoidance action.

This prerogative is extended to a debtor-in-possession by operation of 11 U.S.C. § 1107(a). *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir.2000)("*Cybergenics I*"). It had been generally accepted prior to *Cybergenics II* that a creditors committee could sue under section 544(b) as well, standing in the place of the trustee or debtor, as the true party in interest in the bankruptcy. Indeed, the *Cybergenics II* panel itself referred to granting a committee derivative capacity to sue under section 544(b) as a "rather well-established practice." 304 F.3d at 322–23.

It was in reliance on this well-established practice that this Court granted its approval in March of this year to the Personal Injury Committee and the Property Damage Committee to prosecute the instant fraudulent conveyance proceeding. The necessity of this Order was three-fold. First, the potential recovery was, and remains, material to the estate. It is represented that the suit might lead to the recovery of over $3.8 billion, in comparison to a book value of $2.7 billion for all of the debtor's other assets.

Second, without pre-judging the merits, it was apparent on the face of the papers before the Court that the allegations were at least "colorable." *In re Gibson Group, Inc.*, 66 F.3d 1436, 1438–39 (6th Cir.1995)(creditor granted derivative standing to bring avoidance action where claim colorable, debtor refuses to bring claim, and pursuit of claim would benefit the estate). The accused transfers were the subject of pre-petition litigation in at least three different jurisdictions. Since then, in this Court, defendants lost a hotly contested motion on a key legal issue. Slip Op. of July 29, 2002.

Third, it was clear that the debtor either would not or could not prosecute these causes of action. The reasons for this have been set forth in the several Opinions of this Court on the debtor's motions to intervene and then, later, to withdraw. In many of the pre-petition lawsuits previously mentioned, W.R. Grace & Co. disputed the allegations that the accused transfers were fraudulent.

More fundamentally, the success of the fraudulent conveyance claim will turn in part upon fixing W.R. Grace's liability for asbestos personal injury and property damage as of the date of the transfer. The debtor has consistently taken the position that the asbestos claims against it are inflated and in substantial part without merit. The debtor maintains that it cannot argue in support of a fraudulent conveyance claim, regardless of the potential recovery for the estate, if that position would require it to concede the merits of the asbestos claims against it.

The implications of the debtor's quandary have been touched upon in prior Opinions and will be re-examined below. The debtor has reminded the Court that it "announced early on in this case its view that any fraudulent conveyance challenge

... would have no merit," (*Debtors' Opp. to the Joint Motion* at 1), and that the it "would always be characterized as biased" with respect to whether the fraudulent transfer action should be pursued at all.

Consistent with this, the debtor as an intervenor-defendant has been vigorously litigating in concert with Sealed Air to defeat the cause of action, appearing frequently before the Special Master and this Court on disputed pre-trial issues. *See* Bench Memorandum (read into the record Sept. 18, 2002) at 6 ("[T]he debtor has taken the laboring oar on significant parts of this litigation, in particular deposing former W.R. Grace witnesses, advisors and environmental experts. Now Sealed Air complains, bitterly, that debtor's attempt to withdraw leaves it without a significant part of its defense.").

Therefore, the Court granted the Committees' applications for authority to prosecute the fraudulent conveyance proceedings in the debtor's stead. It has been clear, however, from the outset that time was of the essence in this litigation. Sealed Air, then a stranger to the bankruptcy proceeding, stated that it needed to resolve the claim against it so that it could go about its business. Elsewhere the Court has stated that it would not "permit an adversary proceeding to derail or delay resolution of the principal chapter 11 reorganization regardless of how large, complex or hotly contested the subsidiary litigation may be." Memorandum Op. dated Aug. 13, 2002 at 3. Moreover, indications were and still remain that a consensual resolution of the chapter 11 case will not be easily obtained. The Court was convinced that progress towards a plan of reorganization would be unlikely were the uncertainty represented by this unresolved fraudulent conveyance claim to continue to persist. *See* Mem. of the United States Trustee dated Oct. 4, 2002 at 2 ("[I]t is

likely that a Chapter 11 Plan could not be negotiated and confirmed while the outcome of this matter remained a question mark.").

The Court issued its marching orders. On March 12, 2002, a Case Management Order was entered setting September 30, 2002 as the trial date. Anyone experienced with litigation of this scale will appreciate the case management challenge that this date represented. At the same time, with the parties' consent, the Court appointed a Special Master to resolve discovery disputes. Dates were set for all major pre-trial milestones and various parties in interest intervened. The Court authorized the retention of Special Counsel to represent the Committees jointly.

The Court is pleased to say that counsel rose admirably to the task before it. Their professionalism is only highlighted by the fact that the parties' positions are strongly held and the stakes high. Resort to the Special Master and the Court for intervention has been frequent and contentious. The parties briefed a complex motion on the choice of law and the standards for evaluating asbestos claims for insolvency purposes, which resulted in a substantial Opinion by the Court. Experts were retained, deposed and objected to in at least four complex subject areas: asbestos damage (personal injury and property), environmental liability and on the transaction itself. At the eleventh hour the debtor, having earlier won a contested application to intervene, moved to withdraw from the case.

And yet, in mid-September, counsel and the Special Master reported that they were ready for trial. Of course, this effort came at a price. The Court has solicited affidavits from the parties stating their fees and expenses to date. These total in

excess of $16.7 million.[1] While this Court's first concern is preserving the assets of the estate, it does not overlook the fact that a substantial portion of this expenditure was by Sealed Air, a solvent party responsible for its own fees and expenses.

It was at this moment that the debtor filed its motion to withdraw. Sealed Air opposed and moved in the alternative for a 120-day adjournment of the trial date should the Court permit the debtor to withdraw. The Court denied both motions on September 18, in substantial part on the ground that the attendant delay would be unacceptable in light of the effort and expense already invested in readying the case for trial. *In limine* motions were briefed and filed.

Then, on September 20, 2002, the Court of Appeals handed down *Cybergenics II*, invalidating the concept of derivative capacity to sue under 11 U.S.C. § 544(b). On September 24, the Court convened a conference on the record at which counsel expressed their preliminary views on how best to salvage the case and bring the substantive issues to trial. Following this conference, the Court issued an Order to Show Cause proposing a specific solution, primarily to engender further dialogue between the parties and the Court. The Order to Show Cause was heard on October 7, and the parties were instructed to bring the instant motions. Also on October 7, the Court informed the parties that a new trial date would be set for December 2, 2002.

1. The Court directed the parties to submit these affidavits on an *ex parte* basis. The fees of the parties in interest in the bankruptcy were necessarily quick estimations; these parties will be making more detailed submissions in connection with their fee applications in the Bankruptcy Court. Of course, Sealed

## DISCUSSION

The Court is satisfied that no avenue has been left unexplored by counsel in fashioning a remedy for the problem posed by *Cybergenics II*. The Court of Appeals itself offered as a workable solution the appointment of a trustee and substitution of the trustee as plaintiff instead of the committee. 304 F.3d at 333–34. Many other ideas have been floated by the parties and rejected before being memorialized on the record or in a motion. However, with scant exception, the efforts of all concerned have been marked by a sincere desire to advance the two interests long identified by this Court and the parties as paramount in this case—finality of the result and speed in the resolution. The present crop of motions represents the best of the winnowed field. The Court will address them *seriatim*.

### 1. The Motion to Dismiss

■ Understandably, Sealed Air's preferred solution is simply to dismiss the action against it. It opposes each of the other proposals advancing legal or practical arguments why each will not work. In response to a suggestion of counsel at oral argument, Sealed Air contends that it did not waive reliance on the defense of lack of capacity to sue, the issue on which *Cybergenics II* turned.

This motion is not extensively briefed and appears to be designed to preserve Sealed Air's appellate rights. Obviously, if no legal alternative is available, then *Cybergenics II* requires that this case be dismissed. But even Sealed Air does not contend that the law would preclude a

Air is not a party in interest in the bankruptcy. The Court will respect the confidentiality of its litigation costs in the absence of a legitimate need for disclosure. Therefore, all of the fee affidavits will be kept under seal in the chambers of this Court, subject to further Order of this Court or the Court of Appeals.

trustee from prosecuting the action if one were appointed. Sealed Air argues that such an appointment would be untimely because Federal Rule of Civil Procedure requires that a proper party in interest be substituted into an action within "a reasonable time" after an objection to the existing plaintiff's status. Fed.R.Civ.P. 17(a). Sealed Air claims that this "reasonable time" began to run upon the filing of its pleading in which it raised the affirmative defense of lack of standing.

Sealed Air's contention that the affirmative defense started the clock for substituting a real party in interest is parallel to its non-waiver argument, *i.e.* that pleading the affirmative defense also preserved the *Cybergenics II* issue. The pleading itself is boilerplate: "Plaintiffs' claims are barred to the extent Plaintiffs lack standing with respect to some or all of the causes of action asserted in the Complaint." On the other hand, the *Cybergenics II* panel was careful to state that it was concerned with statutory capacity to sue, and not standing in the constitutional or prudential sense. 304 F.3d at 334–35. If Sealed Air's standing defense was enough to preserve the capacity-to-sue argument of *Cybergenics II,* then, the argument would run, it was enough to start the clock on the time for substituting a real party in interest under Rule 17(a).

Assuming this first point, that the defense was preserved, this syllogism overlooks important differences between the rules of pleading and Rule 17 on substitution of parties. Rule 17 qualifies its timeliness requirement as "reasonable." Reasonableness does not enter into Rule 12's requirement that affirmative defenses be raised in the responsive pleading.

Sealed Air argues that its adversaries should have been on notice that the substitution of a Trustee was mandatory following the ruling of the lower court in *Cyber-*

*genics.* The Court rejects this. Without burdening this Opinion with extensive citation, counsel are well aware of the many cases, including the panel in *Cybergenics I,* that treated derivative capacity to sue under section 544 as a settled issue. The petition for an *en banc* hearing in the *Cybergenics* matter represents that there are 261 pending cases in the Third Circuit in which *Cybergenics II* will require a substitution. Regardless of the Court of Appeals' holding with respect to the parties before it, a failure in unrelated cases to anticipate the *Cybergenics II* holding was reasonable. Whether the applications for a fiduciary appointment will permit substitution of a proper party in interest within a reasonable time in this adversary proceeding must be calculated from the date *Cybergenics II* was decided.

Therefore, the Court cannot accept Sealed Air's argument that the only solution to the *Cybergenics II* problem is barred as untimely raised. Indeed, as will appear below, this Court does not believe that a section 1104 appointment is the only or even the best solution at the present time. Consequently, *Cybergenics II* does not mandate the dismissal of this action, and Sealed Air's motion will be denied.

### 2. The Appointment of an Examiner

■ The Debtor, the Property Damage Committee, and the Equity Committee both move for the appointment of an Examiner under 11 U.S.C. § 1104(c). It is accepted by the parties that an Examiner is frequently appointed to determine in the first instance whether a fraudulent conveyance action should be brought. What is proposed here is an examiner with the ability not merely to investigate, but to prosecute as well, a so-called "examiner with expanded powers." Equity Comm. Brf. at 2.

As noted, the Court of Appeals expressly approved the appointment of a trustee where appropriate to prosecute a fraudulent conveyance action when the debtor refuses to act. The parties contend that an examiner can play this role as well as a trustee based on 11 U.S.C. § 1106(b). This section states that "An examiner ... shall perform [certain specified duties of a trustee] and ... any other duties of the trustee that the court orders the debtor in possession not to perform."

Several lower courts have held that this section justifies authorizing an examiner to appear as the party prosecuting the action. *In re SRJ Enters., Inc.*, 151 B.R. 189, 195 (Bankr.N.D.Ill.1993); *Williamson v. Roppollo*, 114 B.R. 127, 129 (W.D.La.1990); *In re Franklin–Lee Homes, Inc.*, 102 B.R. 477, 481 (E.D.N.C.1989). The cases frequently reason that a debtor's refusal to bring a fraudulent conveyance action is the equivalent of the court ordering the debtor not to bring a fraudulent conveyance action, thus permitting the delegation of that authority to an examiner with expanded powers. *SRJ Enters.*, 151 B.R. at 195; *Roppollo*, 114 B.R. at 129. This Court is not convinced.

*Cybergenics II* teaches two fundamental principles. The first is that the decision to bring a section 544 action is the sole prerogative of the trustee (or debtor). In the absence of a trustee, if a debtor refuses to bring an avoidance action it is exercising its statutory prerogative, albeit in the negative. Exercising a right is the antithesis of submitting to an order from the Court. If it were otherwise, the refusal to act would of itself justify the appointment of an examiner to act in the debtor's stead, and the prerogative preserved in *Cybergenics II* would be vitiated.

The second principle is that the Court of Appeals will read the Bankruptcy Code literally. The fact is that this Court has never ordered the debtor not to bring this fraudulent conveyance action. To hold that the debtor's refusal to do so is the same as an order from the Court to that effect would be a leap unsupported by the language of the statute.

 Moreover, the Court has misgivings whether the concept of an examiner acting as the prosecutor of a fraudulent conveyance proceeding is consistent with the more general concept of the examiner under the Code. As the title suggests, the basic job of an examiner is to examine, not to act as a protagonist in the proceedings. *Collier Bankruptcy Manual*, ¶ 1104.03[1] ("The examiner's role is primarily investigative."). The Bankruptcy Code does not authorize the retention by an examiner of attorneys or other professionals. Thus, as a practical matter, it is difficult to see how an examiner could function as a true plaintiff in a complex fraudulent conveyance action.

*Cybergenics II* was clear that only those persons explicitly granted the power to prosecute under section 544 could exercise that power, and examiners are not among that list of persons. Obviously an examiner does not displace the debtor in possession, and an examiner is not the representative of the estate under the Code. One court permitted an examiner to prosecute an avoidance action by analogy to a committee's supposed power under 11 U.S.C. §§ 1106 and 1109. *In re Patton's Busy Bee Disposal Serv., Inc.*, 182 B.R. 681 (Bankr.W.D.N.Y.1995). Plainly, this rationale does not survive *Cybergenics II* in the Third Circuit.

The parties have agreed that the stakes are too high in this case to permit it to go forward on a questionable legal footing. Admittedly, other courts have elected to rely on the device of an examiner to prosecute under section 544. On the other

hand, the *Cybergenics II* case itself shows that to rely on the settled practice of the lower courts is to place one's faith in a weak reed when it runs contrary to a strict reading of the Code. Absent more explicit guidance to the contrary from the Third Circuit, this Court is constrained to hold that permitting an examiner to appear as the plaintiff in this adversary proceeding would not be consistent with *Cybergenics II* and the Bankruptcy Code. Therefore, the motions to appoint an examiner with expanded powers to prosecute this fraudulent conveyance proceeding will be denied.

### 3. The Motion to Appoint a Limited Purpose Trustee

■ This motion must also be denied for essentially the same reason as the motion for an examiner must fail. There is no such entity as a limited purpose trustee under the Code. The Code provides that the trustee shall assume control of all the property of the estate from the debtor. 11 U.S.C. § 521(4). The trustee is accountable for all estate property. 11 U.S.C. § 704. Indeed, a trustee is *"the* representative of the estate." 11 U.S.C. § 323 (emphasis added).

A limited purpose trustee is inherently problematic from a practical standpoint as well. The fiduciary duties of a chapter 11 trustee are mandatory under the Code, and the trustee is liable to creditors for failing to act. A trustee cannot share this burden with a debtor in possession because the judgment of the debtor and the trustee as to the best interest of the estate might conflict. The situation would be even more difficult in the context of this case. How could a trustee vigorously litigate this fraudulent conveyance action as a representative of the estate while the debtor itself opposes it? As the papers submitted on these motions suggest, even access to privileged documents might prove an impossible conflict to resolve.

That a relatively small number of courts may have adopted the limited purpose trustee does not convince the Court. One of these cited by the parties, *In re G & G Transport, Inc.*, 1998 WL 898835 (Bankr. E.D.Pa., Dec. 22, 1998), does not truly contemplate a limited purpose trustee of the type now advanced by the parties. There a trustee was put in place on the understanding that the trustee would retain the debtor's principal to operate the business. The *G & G* court stated the indubitable proposition that the appointment of a Chapter 11 trustee need not displace the current management of the debtor. *Id.* at *4. This falls well short of holding that a Chapter 11 trustee can share the status of representative of the estate with a debtor in possession, particularly one with a stated antagonism to the trustee's primary goal of prosecuting the fraudulent conveyance proceeding.

### 4. The Motion to Appoint a Plenary Trustee

This option starts with the advantage of the imprimatur of the Court of Appeals in *Cybergenics II*. There is no dispute that the appointment of a "plenary," that is, a typical, non-limited purpose Chapter 11 trustee in this case would permit the fraudulent conveyance action to go forward. At least one of the interests in the adversary proceeding, certainty and finality of the result, would clearly be served.

■ Certain facts must be found under 11 U.S.C. § 1104(a) before the Court may order the appointment of a trustee and those facts must be established by clear and convincing evidence. *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 471 (3d Cir.1998). However, the record of this case contains sufficient evidence to indicate that, on a preliminary basis, the ap-

pointment of a trustee may be justified. The parties have urged that practical considerations such as disruption of the debtor's business and lapse in financing prohibit the appointment of a trustee. The Court is not convinced thus far that this is the case.

However, the Court recognizes that appointing a trustee must be considered a last resort. Because there exists yet another option that will permit this proceeding to go forward, and not because the Court perceives any insurmountable barrier, the Court will deny the motion for appointment of a trustee at this time. The following discussion of the merits of the trustee motion must therefore be considered preliminary and in advance of any formal fact-finding.

The Court of Appeals stated plainly that the appointment of a trustee would be a valid solution to the problem of a viable fraudulent conveyance claim and a recalcitrant debtor in possession. *Cybergenics II*, 304 F.3d at 333–34. The Code directly states that a trustee may bring an action under section 544(b). For the reasons already discussed, the Court rejects the argument that the motion for the appointment of a trustee is untimely or that substituting a trustee as the true party in interest in the adversary proceeding has been unreasonably delayed. The *Cybergenics II* panel declined to reach the merits of a trustee appointment, but it was concerned with the unique facts presented in that case. This Court would not countenance so harsh a result here.

▉ Section 1104(a)(1) of the Bankruptcy Code provides for the appointment of a trustee upon a finding of cause, "including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." Subsection (2) permits an appointment "if such appointment is in the interests of creditors, any equity security holders and other interests of the estate." Where the Court makes either of these findings, an order for the appointment of a trustee is mandatory.

The Personal Injury Committee argues that the debtor's refusal or inability to prosecute this action in the face of the Court's determination that the action is worth prosecuting is itself enough to justify a trustee. They claim that the debtor's refusal is both mismanagement of the affairs of the debtor under subsection (a)(1) and is contrary to the interests of the creditors under (a)(2). It is significant that the grandfather case in this area, the Third Circuit's *In re Sharon Steel*, 871 F.2d 1217 (3d Cir.1989), affirmed the appointment of a trustee in part on the ground that the debtor refused to pursue avoidance actions over pre-petition transfer of assets. *See also In re PRS Ins. Group, Inc.*, 274 B.R. 381 (Bankr.D.Del. 2001).

Unlike *Sharon Steel* and *PRS Group*, here there is no suggestion that the debtor's conflict arises from the fact that the fraudulent conveyances were to insiders. On the other hand, "cause" under 11 U.S.C. § 1104(a)(1) may emerge from a wide variety of factual scenarios. *See In re Intercat, Inc.*, 247 B.R. 911, 920–22 (Bankr.S.D.Ga.2000). This would include, presumably, a breach of fiduciary duty owed by the debtor to creditors, a breach the Committees have contended already exists in the debtor's refusal to prosecute this action. Turning to subsection (a)(2), a powerful argument exists that the debtor's failure to prosecute these fraudulent conveyance is inimical to the best interest of the estate and the creditors.

Were this case tried to a successful judgment, it might well be worth more than all the other assets of the debtor

combined. The debtor maintains that this would only occur if the Court recognizes what it contends are meritless asbestos claims. This position does not bear close examination.

The Court intends to value or to estimate the value of these claims as accurately as possible. Speaking hypothetically, if a debtor were to prosecute an avoidance action and argue in favor of the asbestos claims in the solvency branch of the case, all of the creditors would be served. If the Court found that the asbestos claims were valid, then the asbestos claimants would have had their interests protected as creditors and the creditors as a whole would have been better positioned to fairly divide the estate. If the Court determined that the asbestos claims were invalid, then they would have no interest to protect in the first instance.

Here, however, by holding on to its position that a substantial portion of the asbestos claims are not valid, the debtor has aligned itself with the general unsecured creditors and equity holders. Indeed, the debtor has argued that success in the fraudulent transfer action would only result in money flowing to bogus claimants. But this overlooks the fact that, if the action is successful, then the Court must have found for the purposes of the solvency analysis that the claims were valid and that the debtor was insolvent.[2] The debtor's position invites the argument that the debtor does not care that the estate would be more than doubled by a favorable verdict nor that these increased assets would go to deserving asbestos claimants, be-

cause the unsecured creditors and equity holders would net less.[3]

■ Were there no other avenue for pursuing this adversary proceeding, the Court believes that the position of the debtor might well constitute such mismanagement to rise to the level of cause for the appointment of a trustee under section 1104(a)(1). Section 1104(a)(2), calling for a trustee where it is in the interest of creditors, is a more flexible standard. It is clear from the discussion already, indeed it is the law of this case following the Court's Order authorizing the Committees to prosecute, that pursuing this potentially valuable cause of action is in the best interests of the estate.

Those parties opposed to a "plenary" trustee argue that the estate would suffer because of the disruption inherent in displacing the debtor in possession. Two specifics have been advanced. First, the Court has been told that the appointment of a trustee would be an event of default under the financing for the debtor in possession. Second, counsel have represented that appointing a trustee would work a constructive discharge under the employment contracts of senior management.

Further events have undermined these dire predictions. In response, counsel have represented that whether the debtor in possession financing defaults is not automatic, and that this financing will soon be exhausted and subject to renegotiation in any event. Transcript of Oct. 7, 2002 at 41; *see also id.* at 18–20 (U.S. Trustee arguing that Court should not presume that financing institutions would insist on

---

**2.** As discussed, *infra,* the Court reserves judgment on whether findings in this adversary proceeding will have any collateral effect on other proceedings, including the chapter 11 case-in-chief. The discussion in the text assumes what the debtor apparently fears, that

the rulings in this adversary proceeding will bind it in the chapter 11 case.

**3.** Actually, the Personal Injury Committee contends that a successful result in the fraudulent conveyance action would lift all boats, increasing recovery for all.

terminating financing). The Court has reviewed the employment contract of the chief executive officer of the debtor and finds that the relevant constructive discharge provision is triggered only by a material diminution of the powers granted him by the current board.

The Court fails to see how the appointment of a trustee would inevitably work such a diminution of executive power. The United States Trustee points out that if the current management is effective in the operational management of the company, it would be irrational for a trustee to fire them. *Id.* at 18–19. *G & G Transport,* 1998 WL 898835 (Bankr.E.D.Pa.1998), provides an example of a trustee retaining pre-existing management to preserve the continuity of the debtor.

■ The Court need go no further in this analysis, because it is convinced that a trustee is unnecessary to achieve the goal sought by all of the parties. The arguments of the Personal Injury Committee pre-suppose that there is no other way to prosecute the fraudulent conveyance action; if the same result can be obtained by other means, the interests of the creditors and the estate do not demand that a trustee be appointed. The appointment of a trustee in a chapter 11 case "should be the exception, rather than the rule." *Marvel,* 140 F.3d at 471.

■ In this case, where the impetus for a trustee stems from the single issue of the fraudulent conveyance action, the Court believes that a trustee should be a last resort. To repeat, the foregoing discussion is preliminary only, the Court makes *no factual findings at this time* by clear and convincing evidence that a trustee is mandatory. In short, this case has not yet arrived at the point where the last resort must be taken, and the motion for an order to appoint a trustee will therefore be denied.

## 5. The Motion to Reset Trial and Prohibit Participation by the Debtor

The Property Damage Committee moves the Court for an Order resetting this adversary proceeding for trial with the parties configured as they are now. While disagreeing with the grounds advanced by the Committee, the Court agrees that this is the better way for this case to go forward.

■ The Committee argues that Sealed Air waived its reliance on the defense of lack of capacity to sue. As noted above, Sealed Air believes that its affirmative defense of lack of standing preserved its right to rely on *Cybergenics II* now. Sealed Air points out that the lower court in *Cybergenics* treated the textual argument under section 544(b) as an argument going to the standing of the committee in that case to bring the avoidance action. The Court of Appeals in affirming the lower court re-characterized the question as one of capacity to sue and ruled on that basis. This Court might have arrived at a different conclusion on its own. However, the procedural history of *Cybergenics II* is sufficiently similar to this case, that this Court is compelled to find that Sealed Air's boilerplate standing defense preserved its right to rely on the rule announced by the Court of Appeals.

■ Yet the Court is convinced that the unique circumstances of this case require that it go forward, regardless of the holding in *Cybergenics II.* The Court bases this decision equally on two grounds. First, this result is mandated by the need to protect the investment in this matter by the estate and by Sealed Air. Second, resetting the case for trial is the sensible and pragmatic choice, given the timing and procedural posture of the *Cybergenics II* ruling in relation to this case.

As has already been detailed, the parties have expended an enormous sum in fees and expenses in preparing this case for trial. Many millions of these costs will ultimately be borne by the estate in bankruptcy. With the benefit of hindsight, the Court remains convinced that authorizing the prosecution of this adversary proceeding and putting it on a fast track for resolution was the correct course in a worthy cause. No one foresaw the *Cybergenics II* opinion, and it is not clear what could have been done had anyone predicted it. The cause of action would have been no less viable and the debtor no less conflicted.

But the Court must always be mindful that the estate of the debtor W.R. Grace is *in custodia legis*. Some of the trial preparation could perhaps be preserved for the many months that will pass until a plan of reorganization is confirmed, assuming one would ever be confirmed without resolving the dispute in this case. However, the shelf life of much of counsel's preparation is substantially shorter. It cannot be overemphasized that this matter was on the eve of a very complex trial. The likelihood increases with each passing week that witness preparations will become stale, experts will become unavailable, and team members will move on, to name but a few of the vicissitudes of litigation delayed.

These efforts would have to be duplicated and the fees and costs associated with them could never be recovered. Moreover, the estate has already incurred a premium for having the case readied for trial on such an expedited basis. This expense will be utterly without a corresponding benefit should the trial be extensively delayed. Finally, each of these consideration applies with equal or greater force to Sealed Air, for which the cost of this litigation travels directly to its bottom line.

This result cannot be tolerated. The Court would be remiss in its duty were it to permit such a squandering of a debtor's resources. The prejudice to Sealed Air would be patently unfair. The creditors in this chapter 11 case will not be paid in full under any but the most improbable scenarios. The equitable powers inherent in this Court and the power to issue "any order, process, or judgment that is necessary or appropriate" to effectuate the provisions of the Bankruptcy Code, 11 U.S.C. § 105, require that the rule of *Cybergenics II* be relaxed in this unique situation.

The timing of the *Cybergenics II* decision also militates in favor of relief from its holding here. The mandate has not yet issued in that case. A petition for rehearing *en banc* has been filed. Should it fail, a petition for a writ of *certiorari* to the Supreme Court may follow. Meanwhile, had this case proceeded as scheduled on September 30, the trial would likely already have been completed as of the date of this Opinion.

As already discussed, an extensive delay while the *Cybergenics II* appellate practice works itself out is not an acceptable option. Until the appellate courts act on the various petitions, however, *Cybergenics II* is not final. The only viable alternative to resetting the matter for trial is the appointment of a trustee. This event, while perhaps not as drastic as some have maintained, would still entail substantial additional cost and possible disruption of the debtor. Should the *Cybergenics II* decision be set aside, these detriments will have been suffered for nothing. Should *Cybergenics II* survive and the Court of Appeals disapprove of the solution reached in this Opinion, the Court and counsel can revisit the option of a trustee to be substituted as the proper party in interest.

Finally, no other case is likely to find itself in the peculiar circumstances of this

one—a multi-billion dollar litigation, days from trial, potentially derailed by *Cybergenics II*. Consequently, the rule of that case will not be eroded by the equitable result reached here. For these reasons the Court will grant the Property Damage Committee's motion to reset this matter for trial.

The Court will deny, however, the Property Damage Committee's motion to prohibit the debtor from further participation in this matter. The merits of this issue have already been addressed in the Court's ruling on the debtor's motion for leave to withdraw as an intervenor-defendant. The Court will rely on the reasons set forth on the record on that motion and not revisit the issue now.

## 6. Miscellaneous Matters

Because the Court is essentially maintaining the *status quo* and permitting the Sealed Air Matter to proceed to trial in its present configuration, the Fresenius motion will be denied as moot. This Fresenius Matter, Adversary Number 02–2211, will remain stayed per the prior Orders of the Court.

The debtor requested certain "conditions" as part of its motion for the appointment of an examiner or limited purpose trustee. These seek to preserve the privilege of the debtor's evidence from the person who would be prosecuting the action, and an Order from the Court that the debtor will not be bound in the chapter 11 case-in-chief by any rulings in the adversary proceeding.

These conditions are made necessary in large part by the practical problems identified above inherent in the examiner or limited purpose trustee proposal. Because that proposal is not being adopted by the Court, there is no need for further rulings on evidentiary privileges. The Court has already considered the debtor's arguments

regarding the collateral effect of rulings in the adversary proceeding in connection with the debtor's motion to withdraw. The Court believes that the correct time to rule on that issue is when that collateral effect is asserted by a party in a later proceeding. The Court will not rule prospectively.

Lastly, still pending is the Court's Order to Show Cause dated October 2, 2002, and returnable October 7, 2002. This Order to Show Cause will be vacated for the reasons set forth by the Court and counsel on the record at that hearing.

## 7. Interlocutory Appeal

Naturally no party has moved for leave to file an interlocutory appeal in advance of the ruling set forth in this Opinion. The Court is confident, however, that such an application would be forthcoming promptly. Rather than stand on ceremony, and because the grounds are clearly present, the Court will *sua sponte* certify the accompanying Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

 The standard for granting leave to file an interlocutory appeal is a familiar one. Leave shall be granted upon a finding that the issue to be appealed involves a controlling question of law, that there is substantial ground for difference of opinion, and an immediate appeal would advance the ultimate termination of the litigation. *Id.*

 The issue is plainly controlling as the appellant in *Cybergenics II* found to its cost. This Court sails on uncharted waters in fashioning a solution to the problem in this case. It would blink at reality to deny that there is substantial ground for a difference of opinion with regard to the Order entered today. Lastly, finality is too important a consideration for the parties to delay an appellate ruling until after

trial. Likewise, the necessity of a re-trial following a reversal and remand would be an unconscionable waste of the assets of the estate and deprive all the parties of the benefits of the expedited resolution they have all worked hard to achieve.

### CONCLUSION

For the reasons set forth above, the motion of the Property Damage Committee will be granted in part and denied in part. The Sealed Air Matter will be reset for trial and the parties will not be realigned. The balance of the motion of the Property Damage Committee to prohibit the debtor from further participation in the Sealed Air Matter is denied. The several other motions of the parties are also denied. A certificate for interlocutory appeal shall issue.

An appropriate Order is attached.