**In re G–I HOLDINGS INC., et al., Debtors.**

**Official Committee of Asbestos Claimants, Appellant,**

v.

**G–I Holdings Inc., Appellee.**

**Civ. No. 03–842 (WGB).**

United States District Court, D. New Jersey.

June 27, 2003.

Kenneth A. Rosen, Esq., Jeffrey D. Prol, Esq., Lowenstein Sandler, PC, Roseland, NJ, Elihu Inselbuch, Esq., Caplin & Drysdale, Chartered, New York City, Trevor W. Swett, Esq., Peter Van N. Lockwood, Esq., Caplin & Drysdale, Chartered, Washington, D.C., for Appellant.

Dennis J. O'Grady, Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Martin J. Bienenstock, Esq., Kathryn L. Turner, Esq., Weil, Gotshal & Manges LLP, New York City, for Appellee.

### OPINION

BASSLER, District Judge.

■ Before the Court is an appeal by the Official Committee of Asbestos Claimants ("the Committee") of an order by the Bankruptcy Court denying the Committee's motion for appointment of a chapter 11 trustee for the estate of the Debtor, G–I Holdings, Inc. ("G–I"). The Court has jurisdiction of the appeal under 28 U.S.C. § 158(a)(1) because an order appointing or denying appointment of a bankruptcy trustee is a "final order" within the meaning of the statute. *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 470–71 (3d Cir.1998). For the reasons set forth below, the Court **affirms** the decision of the Bankruptcy Court declining to appoint a chapter 11 Trustee.

### FACTS AND PROCEDURAL HISTORY

On January 5, 2001, G–I commenced its voluntary petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). G–I now operates as debtor-in-possession ("DIP") pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G–I is a holding company that succeeded to the liabilities of GAF Corporation ("GAF") and the Ruberoid Company ("Ruberoid"). (Appellant Br. at 8.) Beginning in the 1970s, GAF and Ruberoid, along with other former producers of asbestos and asbestos–containing products, faced mass tort litigation throughout the United States regarding asbestos-related injuries. *See Official Committee of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 277 B.R. 20, 25 (S.D.N.Y.2002)(describing background of GAF's asbestos liabilities).[1] Before filing for chapter 11 reorganization,

---

1. This case is currently pending before District Judge Robert Sweet in the Southern District of New York. In the lawsuit, filed by the Committee against Samuel Heyman on September 17, 2001, the Committee is attempting to void, for the benefit of G–I's estate, certain allegedly fraudulent transactions orchestrated by Heyman in 1997. The Bankruptcy Court

G–I "inherited responsibility for some 150,000 pending asbestos suits" from GAF and Ruberoid. (BC Op.[2] at 6; Appellant's Br. at 8.)

A man named Samuel Heyman owns substantially all of G–I's stock. Heyman came to be G–I's controlling shareholder by originally acquiring GAF in 1983, when it was a publicly-held company. He took GAF private, conducting a leveraged buy-out with a small management team. *Heyman*, 277 B.R. at 25, (Appellant Br. at 9.)

GAF was the parent holding company of two principal operating businesses: (1) ISP, a manufacturer of specialty chemicals and mineral products; and (2) Building Materials Corporation of America ("BMCA"), a manufacturer of roofing and building products. GAF later merged with G–I. *Id.* at 24. Heyman created BMCA in 1994 to assume GAF's building and roofing products business. According to the Committee, this so-called "push-down transaction" unfairly insulated BMCA from asbestos-related liability:

> Before the push-down transaction, the gross assets of the building and roofing products business were available to satisfy the claims of persons injured by the asbestos torts of GAF and Ruberoid. But after that transaction—if it is respected—asbestos claimants can look only to the net assets of that business, as embodied in the stock of BMCA in the hands of the Debtor [G–I]. Thus, by the push-down transaction, Heyman aimed to achieve a "structural subordination" of asbestos creditors' claims to the claims of BMCA's other creditors.

(Appellant Br. at 10.)

Not surprisingly, G–I disputes this characterization of the BMCA restructuring.

At the outset of the bankruptcy proceedings, G–I sought and obtained from the Bankruptcy Court a preliminary injunction enjoining the assertion of present and future asbestos claims against the G–I subsidiary BMCA. Explaining its tactics, G–I asserts the following:

> From the outset of its chapter 11 case, G–I has done everything possible to preserve the value of its primary asset, BMCA, for its creditors and shareholders. To that end, G–I secured a preliminary injunction protecting BMCA from the assertion of asbestos claims until confirmation of a chapter 11 plan or a determination of whether it has successor liability for G–I's asbestos claims. As a result, BMCA's business is thriving.

(Appellee Br. at 13, internal citations to record omitted.) According to G–I, therefore, "BMCA has flourished under Mr. Heyman's control," and G–I has complied with its fiduciary obligations as DIP. (*Id.* at 15, 17.)

Subject to certain terms and conditions, the Bankruptcy Court granted the preliminary injunction enjoining the assertion of present and future asbestos claims against BMCA. (BC Op. at 7.) In addition, on February 7, 2001, G–I and BMCA filed an adversary proceeding in the Bankruptcy Court seeking a declaratory judgment that BMCA was not liable for pending or future asbestos claims against G–I under successor liability or alter ego theories. (*Id.*)

On January 18, 2001, pursuant to 11 U.S.C. § 1102(a), the United States trustee appointed the Committee to represent persons asserting tort claims against G–I for alleged injuries caused by asbestos-

authorized the Committee to pursue these claims pursuant to 11 U.S.C. § 544(b).

2. "BC Op." refers to the opinion issued by United States Bankruptcy Judge Gambardella on December 23, 2002 denying the motion for appointment of a trustee.

containing products manufactured and distributed by GAF or Ruberoid. On November 11, 2002, the Committee filed the present motion for appointment of a chapter 11 trustee ("Trustee Motion").[3] On December 10, 2002, G–I filed its objection to the Trustee Motion. On December 13, 2002, United States Bankruptcy Judge Rosemary Gambardella held a hearing on the Trustee Motion in preparation for which the parties produced and she reviewed over 250 exhibits.[4]

The Committee advanced two arguments in support of its Trustee Motion before the Bankruptcy Court. First, it argued, based on a recent opinion by a panel of the Third Circuit, that an official creditors' committee such as the Committee could not sue to recover property on behalf of a bankruptcy estate. *See In re Cybergenics Corp.*, 304 F.3d 316, 332 (3d Cir.2002)("*Cybergenics II*"), *rehearing en banc granted and opinion vacated by Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 310 F.3d 785 (3d Cir.2002).[5] The Committee therefore contended that a trustee must be appointed in order to prosecute certain fraudulent-transfer and preference-avoidance actions against Heyman and other

defendants. According to the Committee, G–I would never prosecute such actions due to its domination by Heyman. (Appellant Br. at 23.) Thus a trustee was claimed to be necessary to advance the interests of the G–I estate and its creditors.

In her 33–page opinion denying the Trustee Motion, Judge Gambardella rejected the Committee's *Cybergenics II* argument. She found:

> Heyman and other entities which are the target of potential avoidance actions have ... executed tolling agreements in favor of the Committee in the event the decision in *Cybergenics [II]* is reinstated.

(BC Op. at 14–15.) Judge Gambardella believed such tolling agreements sufficiently protected G–I because they allowed a trustee to be appointed or other appropriate measures taken in the event that the Third Circuit ruled that the Committee could not prosecute the avoidance actions on its own.

The second argument asserted by the Committee in its Trustee Motion before the Bankruptcy Court was "that exces-

---

**3.** On November 27 and December 13, 2002, respectively, the Internal Revenue Service and Legal Representative joined in the Committee's Trustee Motion. These entities "fully support" the Committee's current appeal of the Bankruptcy Court's denial of the Trustee Motion, but, in the interest of conserving resources, did not file separate briefs with this Court. (Appellant Br. at 2.)

**4.** Judge Gambardella, Chief United States Bankruptcy Judge for the District of New Jersey, continues to preside over the G–I bankruptcy matters. On May 13, 2003, this Court withdrew from the Bankruptcy Court the reference of two adversary proceedings relating to the G–I bankruptcy. The first regards the successor liability of BMCA and the second concerns G–1's objection to certain claims filed against G–1 by the Internal Reve-

nue Service. *See G–I Holdings, Inc. v. Bennett*, Civ. No. 02–3626 (WGB), 2003 WL 21499916 (May 13, 2003) and *United States v. G–I Holdings, Inc.*, Civ. No. 02–3082 (WGB), 2003 WL 21499915 (May 13, 2003)(withdrawing reference to the Bankruptcy Court of adversary proceedings, Bankr.Case Nos. 01–3066(RG) and 01–30135(RG) respectively).

**5.** As discussed further below, upon the en banc rehearing, the Third Circuit issued a new decision holding that the Bankruptcy Code empowers bankruptcy courts to authorize creditors' committees to sue derivatively to recover property for the benefit of the estate. *Official Committee of Unsecured Creditors of Cybergencis Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 565 (3d Cir. 2003).

sive conflict between [G–I] and its principal creditors, in the totality of the circumstances, warrants appointment of a trustee." (Appellant Br. at 25.) Judge Gambardella also rejected this argument, finding that the "grounds" asserted by the Committee were "insufficient to mandate appointment of a trustee" and that "the facts warrant [that] the Court leave the current management of G–I in place." (BC Op. at 22, 28.)

In its appeal of Judge Gambardella's decision, the Committee argues that "the Bankruptcy Court erred in adopting, as its basis for rejecting the Committee's motion for a trustee, a 'strong presumption' favoring the Debtor's current management." (Appellant Repl. Br. at 1.) On the other hand, G–I posits that the Bankruptcy Court (1) was not clearly erroneous in finding that the Committee had failed to show clear and convincing evidence that a trustee was needed and (2) did not abuse its discretion in declining to appoint a trustee. (Appellee Br. at 8.)

## ANALYSIS

### I. Appointment of a Trustee under § 1104(a)

■■■ The decision to appoint a trustee must be made on a case–by–case basis. *In re Sharon Steel Corporation*, 871 F.2d 1217, 1226 (3d Cir.1989). The Bankruptcy Code provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court **shall** order the appointment of a trustee—

(1) **for cause,** including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either

before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; **or**

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(emphasis added). A court therefore must appoint a trustee if it finds "cause" to do so, or if a trustee would further "the interests of creditors, any equity security holders, and other interests of the estate." *Id.*

■■■ While appointment of a trustee is mandatory upon a finding of cause under subsection (1) or upon a finding that a trustee would serve the interests outlined in subsection (2), the decision to appoint a trustee still falls within the court's discretion. A determination of "cause" under subsection (1) is within the court's discretion. *Sharon*, 871 F.2d at 1226. In assessing whether cause exists, the court must find facts and apply those facts to the relevant precepts. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 473 (3d Cir.1998). Subsection (2) similarly "emphasizes the court's discretion, allowing it to appoint a trustee when to do so would serve the parties' and estate's interests." *Id.* The decision is therefore reviewable only for abuse of discretion. *Id.* at 1225.

■■■ In every motion to appoint a trustee under section 1104(a), the movant must prove the need for a trustee by clear and convincing evidence. *Sharon*, 871 F.2d at 1226. Evidence is "clear and convincing" when:

[it] produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Matter of Jobes,* 108 N.J. 394, 407, 529 A.2d 434 (1987)(quoted in *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)).

In *Marvel,* the court reiterated the clear and convincing standard and also discussed the usual "presumption" against appointing a trustee:

It is settled that appointment of a trustee should be the exception, rather than the rule. In the usual chapter 11 proceeding, the debtor remains in possession throughout reorganization because current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate. Thus the basis for the strong presumption against appointing an outside trustee is that there is often no need for one: [t]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization. The strong presumption also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization.

140 F.3d at 471 (internal quotations and citations omitted).

The *Marvel* court emphasized the fact-intensive and discretionary nature of the decision regarding whether to appoint a trustee:

We expressly hold that there is no per se rule by which mere conflicts or acrimony between debtor and creditor mandate the appointment of a trustee.... In the view we take, it is within the district court's [6] sound discretion to make a determination of cause, and this requires factfinding and application of the facts to relevant precepts.

*Id.* at 473.

## II. Standard of Review of Bankruptcy Court Decision

As previously noted, the Court reviews for abuse of discretion the Bankruptcy Court's decision not to appoint a trustee under either subsection of § 1104(a). *Sharon,* 871 F.2d at 1225; *Marvel,* 140 F.3d at 470.

Furthermore, a district court may reverse a bankruptcy court's factual findings only if the district court believes those findings to be clearly erroneous. Fed. R. Bankr.P. 8013. The *Sharon* court explained:

To the extent that the bankruptcy court made any findings concerning whether, for example, certain events had occurred or certain actions were taken, it made findings of basic facts. These findings must be reviewed under a clearly erroneous standard. The same standard would govern review of any factual inferences drawn from these facts.

871 F.2d at 1223. A factual finding is clearly erroneous if it is either "completely devoid of minimum evidentiary support displaying some hue of credibility or ...

---

**6.** In *Marvel,* because the litigation had been withdrawn from the bankruptcy court, it was the district court, rather than the bankruptcy court, that heard argument on whether a trustee should be appointed.

bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan,* 465 F.2d 1298, 1302–03 (3d Cir.1972). Alternatively, a district court may conclude that factual findings are clearly erroneous if, while there is some evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

 The legal conclusions of the bankruptcy court, by contrast, are subject to plenary review. Fed. R. Bankr.P. 8013; *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989). Because decisions often present mixed questions of law and fact, the reviewing court must apply the appropriate standard to each aspect of the decision. *See Sharon,* 871 F.2d at 1222. Thus the reviewing court "must exercise a plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981).

## III. The Bankruptcy Court Did Not Commit Legal Error in Applying a "Strong Presumption" in Favor of G–I's Current Management

 The Committee argues that (1) the usual presumption in favor of current management is inapplicable in this case; (2) Judge Gambardella's "reliance upon that presumption as the basis for [her] ruling was an abuse of discretion *per se;*" and (3) because the presumption does not apply, the Committee only had to show that a trustee was "warranted by a preponderance of the evidence," rather than by clear and convincing evidence. (Appellant Repl. Br. at 5, 21.) G–I counters that Judge Gambardella (1) properly applied the presumption and did not abuse her

discretion in declining to appoint a trustee under § 1104(a) and, (2) even if the presumption does not apply, provided ample justification for her denial of the appointment of a trustee. (Appellee Br. at 23, 38.) The Court agrees with G–I and concludes that all three of the Committee's arguments fail.

The Committee contends that the rationales underlying the presumption do not apply in this case for three reasons: (1) G–I is a holding company—a mere shell that operates no "business" at all—and hence its existing managers' familiarity with the business is irrelevant to the decision of whether or not to appoint a trustee (Appellant Repl. Br. at 6–13); (2) because a trustee would simply need to manage asbestos claims, the trustee would not need to incur the usual substantial costs associated with learning how to manage an active service company (*Id.* at 13–14;); and (3) G–I has shown no presumptive ability to discharge its fiduciary duties to creditors given its actions and the "structural problem" of Heyman's control as the dominant shareholder (*Id.* at 14–20.).

The Committee is correct that the *Marvel* court found that the usual presumption in favor of management did not apply. The debtor-in-possession had taken control over the debtor's management a mere six months after the chapter 11 filing. The court explained:

> We are not confronted with a debtor who possesses extensive familiarity with the company's operations. It is therefore inappropriate to suggest that the usual presumption should be applied to a Johnny-come-lately debtor-in-possession, especially one that is also a creditor.

140 F.3d at 463. By contrast, in this case, Judge Gambardella found "that management of G–I has been in place for years and is familiar with the companies' opera-

tions." (BC Op. at 21.) Furthermore, while the court did not explicitly state so in *Marvel*, it was not simply the fact that management was new that rendered the presumption inapplicable, but also the fact that the debtor–in–possession was "also a substantial creditor" of the estate. 140 F.3d at 463. The court could not presume that a creditor could act as a fiduciary for all creditors and the estate.

In addition, perhaps the most important factor that distinguishes *Marvel* is that the reviewing court did not find that the lower court had abused its discretion in appointing a trustee. Rather, the Third Circuit upheld the district court's determination that "deep seated conflict and animosity between a debtor and its creditors" was "at the heart of this bankruptcy case" and that a trustee would most efficiently serve to implement a reorganization plan in the best interests of the parties and the estate. *Id.* at 474. In this case, Judge Gambardella committed no legal error in applying the presumption that the *Marvel* court found inapplicable.

Furthermore, neither *Marvel* nor any other case cited by the parties suggests that if a court deems the presumption in favor of current management inapplicable, the movant need no longer present clear and convincing evidence that a trustee is necessary. After detailing the Committee's evidence supporting appointment of a trustee, Judge Gambardella found "in total" the "grounds" asserted by the Committee to be insufficient to mandate the appointment of a trustee. (BC Op. at 21–22.) The Committee asserts that Judge Gambardella made no factual findings to support her decision that a trustee was not needed. For instance, the Committee states that "[s]he did not find that the Committee's allegations of acrimony and conflicts of interest lacked a factual basis," (Appellant Br. at 25), and that "she did not

engage in any fact-specific inquiry to determine whether G–I is actually being 'managed' in any sense that would be hampered by a trustee." (*Id.* at 26.) The Committee asks this Court to conduct "a more searching review of the record and the [purported "structural"] problem [of Heyman's domination of G–I]." (June 16, 2003 Hearing Tr. at 60:24–25.)

The problem with the Committee's request is that the law does not charge this Court with conducting "a more searching review of the record," but rather with determining whether Judge Gambardella abused her discretion. Judge Gambardella did not resolve the merits of the Committee's factual contentions, but she did consider them. She also noted G–I's assertions that the very actions challenged by the Committee actually inured to the benefit of the estate and creditors, (BC Op. at 31), and that the challenged actions were the subject of various proceedings that would be resolved "in the normal motion practice." (*Id.* at 30.) The Committee may be correct in asserting that by relying on the presumption that a trustee was unnecessary, Judge Gambardella avoided "the hard business of coming to grips with the conflicts and saying who's right." (June 16, 2003 Hearing Tr. at 60:15–18.) Nevertheless, a bankruptcy court cannot be expected to resolve all factual disputes that are the subject of various ongoing litigation in determining a motion for appointment of a trustee.

The Committee characterizes G–I's actions in a certain way. The Committee asserts that a "fundamental structural problem" exists when a debtor-in-possession "labors" under the domination of a controlling shareholder who, according to the Committee, is "abusing his control" by trying to "salvage equity" for himself. (June 16, 2003 Hearing Tr. at 53:21–22 and 58:7–8.) Heyman's control and self-inter-

est allegedly preclude a "fiduciary-like approach." (*Id.* at 57:20.) According to the Committee, as a DIP dominated by Heyman, G–I cannot distinguish between the interests of the estate and those of Heyman. If these allegations were established, they might indeed mandate appointment of a trustee.

Based on these unproven allegations, however, Judge Gambardella did not find clear and convincing evidence that a trustee was necessary. She found the allegations insufficient to show "that a trustee's control would augment the success of the debtor's reorganization or facilitate that reorganization effort, nor the success of the debtor's underlying subsidiary, BMCA." (BC Op. at 21.) The Judge clearly is not convinced that Heyman is fraudulently attempting to avoid asbestos liability or that his control of G–I renders G–I unfit to serve as fiduciary for the estate. She correctly notes that the parties will have the opportunity to test and ultimately resolve such allegations in the other pending proceedings. (BC Op. at 31.)

 Judge Gambardella did not abuse her discretion in concluding that the G–I bankruptcy could proceed without a trustee at this point. "[A]ppointing a trustee must be considered a last resort." *In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr.D.Del.2002)(finding the case had "not yet arrived at the point where [this] last resort must be taken" where a creditor committee could prosecute a fraudulent conveyance action on behalf of the estate). In Judge Gambardella's judgment, the G–I bankruptcy proceedings have not arrived at such an impasse:

> [T]here is a fine line between bitter acrimony and healthy conflict between the parties. This Court finds, in reviewing this record in its aggregate form, that there does not exist what the Third

Circuit in [*Marvel*] described as "unhealthy conflicts."

(BC Op. at 31.) The mere existence of the adversary proceedings, therefore, does not amount to cause for a trustee under § 1104(a)(1) or otherwise favor a trustee under § 1104(a)(2).

Judge Gambardella similarly did not abuse her discretion in finding that the Committee had failed to produce clear and convincing evidence of the need for a trustee under either subsection of 1104(a). The Committee has not proved the need for a trustee by the same type of clear and convincing evidence presented in the cases cited by the parties in which the bankruptcy court appointed a trustee. *See, e.g., Sharon*, 871 F.2d at 1221 (bankruptcy court determined that "sum" of DIP's behavior "amounted at best to voidable preferences and at worst to fraudulent conveyances" and that debtor could not continue to operate under current management); *see also In re PRS Insurance Group, Inc.*, 274 B.R. 381, 387–388 (Bankr.D.Del.2001)(debtor provided no explanation for diversion of funds from debtor's subsidiaries; controlling shareholder invoked Fifth Amendment privilege in refusing to answer questions regarding alleged fraudulent diversion of assets; no creditors' committee had been appointed to pursue actions; and appointment of trustee could have "no disruptive effect" on debtor's business operations); *In re Intercat, Inc.*, 247 B.R. 911, 915–920 (Bankr.S.D.Ga.2000)(bankruptcy court made specific findings of fact resolving merits of each act or transaction allegedly amounting to fraud, mismanagement, or other cause for a trustee under § 1104(a)(1)).

## IV. The Committee's Argument that a Trustee Must Be Appointed in Light of *Cybergenics II* Is Moot

 The Third Circuit recently issued a new decision replacing the vacated opin-

ion in *Cybergenics II.* In this decision, the court clearly held "that bankruptcy courts can authorize creditors' committees to sue derivatively to avoid fraudulent transfers for the benefit of [a debtor's] estate." *Official Committee of Unsecured Creditors of Cybergencis Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 579–80 (3d Cir.2003). The prospect that the Committee would not be able to bring fraudulent transfer actions, therefore, no longer exists.

## CONCLUSION

For the reasons set forth above, the Court **affirms** the Bankruptcy Court's denial of the Committee's motion to appoint a trustee.